[Civ. No. 21743.   Second Dist., Div. Three.   Nov. 28, 1956.]

L. C. FAUS, Respondent, v. PACIFIC ELECTRIC RAIL-
WAY COMPANY (a Corporation), Appellant.

E. D. Yeomans and Roger M. Sullivan for Appellant.

Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., and Francis H. O'Neill for Respondent.

VALLÉE, J.—Appeal by defendant from an adverse judgment in a suit to quiet title and for possession of realty which had been used by defendant as a portion of its right of way in the county of Los Angeles.

In 1897 Pedro Batz, the then owner, by grant deed conveyed a large parcel of land to Charles Emery. The deed included the property which is the subject of this suit.[1]

On August 28, 1901, Charles and Irene Emery by grant deed conveyed four parcels of the "land" containing about 7.55 acres to Los Angeles and Pasadena Electric Railway Company, a corporation, "for the uses and purposes and under the limitations hereinafter provided," described as follows:

"1. A strip of land 60 feet in width [metes and bounds description]."

"2. A strip of land 60 feet in width [metes and bounds description]."

"3. A triangular piece of land [metes and bounds description]."

"4. A triangular piece of land [metes and bounds description]."

The deed contained the following pertinent provisions:

"And it is further understood, stipulated and agreed that this conveyance is made and delivered by the said grantors and received and accepted by the said grantees, upon, under and subject to the following conditions subsequent to be kept and performed by the party of the second part, its successors and assigns, that is to say: That the said main and branch lines of said electric railway shall be constructed, upon the lands hereby granted . . .; That after such construction said railway line shall be continuously operated . . .; That no part of said lands hereby conveyed shall be used . . . for any other than for the legitimate railroad purposes hereinabove set forth and provided; And upon the breach of any one of the aforesaid conditions subsequent the said parties of the first part, their heirs or assigns without paying any compensation for any buildings or other improvements or betterments that may then be upon said premises, and without making any com-

---

[1]All documents relevant to this action were duly recorded.

pensation or incurring any liability for damages or losses of any kind growing out of such reentry, may reenter in and upon, and take possession of the said strips and parcels of land hereby granted, and the whole thereof, and each and every portion thereof, and have and enjoy the same forever as and of their former estate, and in all respects as if these presents had never been made or delivered, anything herein contained to the contrary thereof notwithstanding; And the party of the second part its successors and assigns shall upon such breach immediately surrender possession of the said premises, and of each and every part thereof, and shall forfeit all rights thereto acquired hereunder."[2]

The four parcels were acquired by defendant from Los Angeles and Pacific Electric Railway Company prior to 1911.

On May 17, 1904, the Emerys by grant deed conveyed two parcels of land containing 2.21 acres to defendant "for the use and purposes only and subject to the limitations hereinafter provided those certain pieces or parcels of land situate in said County of Los Angeles" described as follows:

"First: A strip of land of irregular width [metes and bounds description]. Together with the right to construct and maintain upon land adjoining the above described strip of land . . . side slopes."

"Second: A strip of land of irregular width [metes and bounds description]. Together with the right to construct and maintain upon land adjoining the above described strip of land . . . side slopes."

The deed states that the parties agreed the conveyance was made "subject to the following conditions, subsequent to be kept and performed by the said party of the second part, its successors and assigns, that is to say: That said described land is to be used in conjunction with the said lands conveyed by said deed to the Los Angeles and Pacific Electric Railway Company as a right of way for the railroad tracks . . . and for no other purpose whatsoever, . . . That the railway tracks which now are or may hereafter be placed upon the land hereby conveyed . . . shall be used only for the purposes of through travel. . . ." This deed contained a provision simi-

---

[2]The deed also contained provision by which the Emerys reserved the right to establish streets "across the said parcels of land"; the right to lay pipe lines "across said strips and parcels of land." The grantee agreed to beautify "said tracts and parcels of land"; and to use "the said triangular shaped piece of land in Section 8 hereby conveyed" for tracks and a railway station.

lar to that in the 1901 deed with respect to the right of re-entry.[3]

Mrs. Emery died in 1907. No claim is made that she had any right in the subject property. Mr. Emery died in 1915. His estate was probated in the superior court of San Benito County. On September 5, 1916, that court by its final decree of distribution appointed Lucien Oudin testamentary trustee of and distributed the entire estate to him in trust with directions to sell all real property situated in California.

On December 21, 1921, Oudin, as trustee, by grant deed conveyed to F. M. Prescott substantially all the land originally acquired by Emery from Batz and including within its boundaries the subject property, together with a large parcel not acquired from Batz, with this exception:

"Excepting however, from the parcel above described [substantially all of the land originally acquired by Emery from Batz in 1897] the following, to-wit: . . .

"Fourth. Those certain pieces or parcels of the southeast quarter of section eight (8) and of the northeast quarter of the northwest quarter of section seventeen (17) township 1 south range 12 west S.B.B. and M. conveyed to Pacific Electric Railway Company, a corporation, or its predecessor, for a right of way and for depot purposes, said parcels being particularly described in deeds dated May 17, 1904, recorded in Book 2100 at page 248 of Deeds and dated August 28, 1901,

---

[3]The re-entry provision reads: And in the event of a failure on the part of the said party of the second part, its successors and assigns to comply with any of the covenants and agreements herein set forth, the said parties of the first part their heirs and assigns, without paying any compensation whatever for any improvements or betterments which may have been placed upon said premises and without making any compensation or concurring [sic] any liability for damages or loss of any kind growing out of such re-entry may reenter in and upon and take possession of the said strips and parcels of land hereby granted and the whole thereof, and each and every portion thereof and have and enjoy the same forever as and of their former estate, and in all respects as if these presents had never been made or delivered, anything herein contained to the contrary thereof notwithstanding.

"And the said party of the second part, its successors and assigns shall upon such breach immediately surrender possession of the said premises and of each and every part thereof and shall forfcit all rights thereto acquired hereunder."

The 1904 deed also contained provisions by which it was agreed that the land was to be used in conjunction with the "lands conveyed" by the 1901 deed; that railway tracks on "the land hereby conveyed" or "the said described land conveyed" by the 1901 deed should be used only for specified purposes. There are several other references to "the land herein conveyed" or "the land conveyed by" the 1901 deed,

recorded in Book 1490 of Deeds at page 173 records of Los Angeles County.''

. On January 9, 1922, Prescott by grant deed conveyed the property described in his deed from Oudin to Title Insurance & Trust Company. This deed contained the same exception as in the deed from Oudin to Prescott.

. On September 20, 1922, Title Insurance and Trust Company released and quitclaimed to defendant all its right, title and interest in the property described in the Emery deeds of 1901 and 1904.

In September 1951 defendant, with the permission of the Public Utilities Commission, ceased operating railroad lines on the property conveyed by the deeds of 1901 and 1904, and removed all its rails.

Oudin died and Waller Taylor II was appointed trustee of the Emery testamentary trust in his place. On December 29, 1953, Taylor executed a quitclaim deed of the subject property to plaintiff. Plaintiff brought this suit to quiet title and for possession of the property, claiming under the re-entry clauses in the deeds of 1901 and 1904. The judgment decreed plaintiff is the owner in fee simple and entitled to possession of the property from and after the abandonment of the property by defendant in 1951, excepting certain portions acquired in 1947 by Alhambra for street-widening purposes by eminent domain proceedings and subject to certain public easements which had been executed and recorded by defendant as conditional grantee of the property prior to its abandonment of the property on September 30, 1951. Defendant appeals.

. Defendant's first contention is that the deed from Taylor to plaintiff did not convey the reversionary rights. It is argued that whether the fee or an easement was conveyed by the deeds of 1901 and 1904, the reversionary rights were conveyed with the surrounding property by the deed from Oudin to Prescott and they were subsequently released to defendant by Prescott's successor, Title Insurance and Trust Company. Defendants urged below that the Oudin-Prescott deed is indefinite and uncertain in that it cannot be ascertained therefrom whether the reversionary rights were conveyed thereby. They further contended it was the intention of Oudin to convey such rights. In support of their contention they relied on a provision in Mr. Emery's will directing the testamentary trustee "to sell all of my real property situated in the State of California," and a report made by Oudin to the superior

court of San Benito County that he had sold "all said real property in California" except a parcel in Santa Barbara County. The court found that defendant is not the owner or entitled to the possession of the land conveyed by the 1901 and 1904 deeds, thereby impliedly finding that the Oudin-Prescott deed did not convey the reversionary rights.

Defendant says we are not bound by the trial court's construction of the Oudin-Prescott deed. The same contention with respect to a trial court's construction of a written contract was made in *Overton* v. *Vita-Food Corp.*, 94 Cal.App. 2d 367 [210 P.2d 757], in which we said (p. 370):

"Appellant first says that we are not bound by the trial court's construction of the contract and are called upon to determine its meaning as a matter of law. Counsel cite *Moore* v. *Wood*, 26 Cal.2d 621, 630 [160 P.2d 772], *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825], and *Texas Co.* v. *Todd*, 19 Cal.App.2d 174, 185 [64 P.2d 1180]. This rule applies only where the trial court's decision was based solely on the terms of the written instrument. (*Union Nat. Bank* v. *Hunter*, 93 Cal.App.2d 669, 673 [209 P.2d 621].) This was the situation in the cases cited by counsel. The rule is otherwise where parol evidence is introduced in aid of interpretation of the contract and where the evidence is such that conflicting inferences may be drawn therefrom. In such case the rule is that a reviewing court will accept or adhere to the interpretation of a contract adopted by the trial court and not substitute another of its own. (*Estate of Rule*, 25 Cal.2d 1, 11 [152 P.2d 1003, 155 A.L.R. 1319].) In the case at bar evidence was introduced in aid of interpretation of the contract and conflicting inferences may be drawn therefrom."

Defendant concedes "that conflicting inferences could be drawn from the will and report, which we rely on as confirming our construction of the Oudin-Prescott deed." Since conflicting inferences may be drawn from the evidence introduced for the purpose of construing the Oudin-Prescott deed, the issue was one of fact and the finding of the trial court is binding on review.

The deed from Oudin to Prescott expressly excepted from the property thereby conveyed the property conveyed to Los Angeles and Pasadena Electric Railway Company in 1901 and to defendant in 1904. The trial court found as a fact that title to the reversionary rights created by the Emery deeds was not conveyed by the Oudin-Prescott deed. The deed from Prescott to Title Insurance and Trust Company expressly ex-

cepted the reversionary rights. They remained in the trustee of the Emery testamentary trust—Oudin, later Taylor. (*Hannah* v. *Southern Pac. R. R. Co.*, 48 Cal.App. 517 [192 P. 304].) Taylor, pursuant to an order of the superior court of San Benito County, conveyed the reversionary rights to, and they are vested in, plaintiff.

The next point urged is that the court erred in declaring a forfeiture in view of claimed undisputed evidence as to "changed conditions" and waiver. The contention is that by reason of a change of economic conditions and substitution of motor coach service over parallel routes, defendant·was excused from further compliance with the terms of the conditions subsequent and that these facts constitute a waiver on the part of plaintiff and his predecessors in interest. The argument seems to be that abandonment of the use of the land as a right of way should be excused because a different mode of transportation had been made necessary through a change of economic conditions. The court found that defendant in 1951 ceased operating railroad lines on the land conveyed by the Emery deeds and removed all its rails, and that the "abandonment of . . . the use of said right of way for railroad purposes and the cessation of use of said property, and failure to perform the express conditions in the said grant of right of way to use the same for railroad purposes . . . constitute a breach of said conditions subsequent."[4] Defendant does not challenge these findings. ▮ Whether there has been an abandonment is a question of fact, not of law. (*People* v. *Ocean Shore Railroad*, 32 Cal.2d 406, 417 [196 P.2d 570, 6 A.L.R.2d 1179]; *Tamalpais etc. Co.* v. *Northwestern Pac. R. R. Co.*, 73 Cal.App.2d 917, 931-932 [167 P.2d 825].) The condition subsequent specified in the Emery deeds occurred; the electric railway constructed on the lands granted ceased to be maintained and operated, and the rails were removed. The land has reverted. (*Potomac Edison Co.* v. *Routzahn*, 192 Md. 499 [65 A.2d 580, 584]; *Missouri Pac. R. Co.* v. *Williamson*, 195 Ark. 487 [112 S.W.2d 957, 958].)

A ruling of the court excluding evidence of the dealings

---

[4] "The court finds that it is true that in or about September, 1951, defendant, Pacific Electric Railway Company, discontinued rail passenger service and established motor coach passenger service over parallel and adjacent routes; the court finds that it is not true that the purpose of the original grantor in the use of the language of the deed to the Los Angeles and Pasadena Electric Railway Company was to insure passenger service in connection with the development and subdivision of the adjacent land then owned by said grantors. . . ."

of plaintiff with the trustee and the beneficiaries of the Emery testamentary trust for the purpose of prosecuting the present litigation is assigned as error. The argument is that the evidence would have shown plaintiff's title is invalid. The point is without merit. It appears from the order of the superior court of San Benito County, quoted in the margin,[5] that plaintiff's activities and agreements with the trustee and the beneficiaries were fully disclosed to that court before it made the order, and that with that information before it the court

[5]The order in part reads: ''The petition of L. C. FAUS, Administrator with Will Annexed of the Estate of CHARLES GOODWIN EMERY, Deceased, for an Order Appointing Trustee of Testamentary Trust, coming on regularly to be heard this 1st day of December, 1953, the Court, after examining the petition and hearing the evidence and having been advised that due notice of the hearing of such petition has been given as required by law, and an affidavit having been filed by the said L. C. FAUS that certain property, being after-discovered property, having been appraised in the said estate, upon its reopening, at the value of $3.00, and a Certificate of No Tax from the California Inheritance Tax Commissioner having been filed in the said estate, as reopened, covering the said property, hereinafter described; and it appearing to the Court's satisfaction that each and all of the beneficiaries under the said trust have executed quit claim deeds of their right, title and interest in and to the said property to L. C. FAUS and have entered into an agreement with the said L. C. FAUS that he will prosecute on their behalf necessary litigation to reduce the said property, or the proceeds thereof, to possession and will pay all expenses thereof, including attorney's fees, in consideration of which he will receive as his compensation and for expenses one-half of the property after reduction of the same to possession; and the Court being satisfied that the law requires, and that in order to carry out said trust it is necessary, that a trustee be appointed,

''IT IS THEREFORE ORDERED BY THE COURT that WALLER TAYLOR II be appointed Trustee under the trust set forth in the Will of said deceased, to fill the vacancy in said trusteeship caused by the death of LUCIAN OUDIN, the person named as said Trustee in said Will, upon giving bond in the sum of $100;

''AND IT IS FURTHER ORDERED BY THE COURT that the said Trustee take the necessary steps, including commencement of suits, if necessary, to reduce the said estate to possession, and for said purpose the said Trustee is authorized to enter into an agreement with L. C. FAUS for the prosecution of said lawsuit, whereby and whereunder the costs of said suit, including attorney's fees, shall be borne by said L. C. FAUS with no charge to the said estate or the trustee thereof, in consideration for which one-half of the net proceeds of the estate shall be distributed to the Trustee for distribution in accordance with the provisions of said trust as set forth in the Will of the above named deceased;

''AND IT IS FURTHER ORDERED that the said Trustee be authorized to enter into an agreement with the said L. C. FAUS, and for such purpose to execute any and all deeds, documents or papers necessary thereto, on the following describd property.''

''AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said L. C. FAUS be discharged as Administrator with Will Annexed of the said estate and that his sureties be relieved from liability subsequent hereto. Further found and ordered that the Trustee has furnished the bond hereinabove required of him.''

authorized the conveyance from the trustee Taylor to plaintiff. A right of re-entry or of repossession for breach of conditions subsequent can be transferred. (Civ. Code, § 1046.) Taylor is not claiming any illegality in the deed to plaintiff; nor are the beneficiaries.

The defense of illegality, although open to the parties and those claiming under them, cannot as a general rule be invoked by third persons. (*California etc. Assn.* v. *Stelling*, 141 Cal. 713, 720 [75 P. 320]; *Wayman Inv. Co.* v. *Wessinger*, 13 Cal.App. 108, 110 [108 P. 1022]; 17 C.J.S. 671, § 283.) The defense is raised by defendant, a stranger, solely to prevent the enforcement of valid conditions subsequent in deeds executed to defendant and its predecessor in interest, the terms of which have been admittedly broken by defendant. The court did not err in excluding the evidence.

Finally, it is asserted the reversionary rights vested in the trustee of the Emery testamentary trust were destroyed by defendant's adverse possession under color of the deed from Title Insurance and Trust Company. This contention is predicated on the fallacious assumption that by "color of title" under the quitclaim deed from Title Insurance and Trust Company to defendant, made in 1922 and recorded in 1923, the latter obtained "prescriptive title" by continuous "adverse possession" since 1923. It is elementary law that possession alone, no matter how exclusive and complete, is not sufficient to create a prescriptive title. In order to do that the possession must be "adverse" to the party against whom such title is asserted. (*Dobbins* v. *Economics Gas Co.*, 182 Cal. 616, 630 [189 P. 1073]; *Grimmesey* v. *Kirtlan*, 93 Cal.App. 658, 665 [270 P. 243]; *Madden* v. *Hall*, 21 Cal.App. 541 [132 P. 291].) At all times after recordation of the quitclaim from Title Insurance and Trust Company to defendant, the latter continuously used the property for the purposes stated in the Emery deeds until September 1951. There was no evidence that the trustee of the Emery testamentary trust had any knowledge of any claim on the part of defendant to an unrestricted fee in the land. Nor was there any evidence that defendant took any affirmative step to disclose an intent to act in derogation of the terms of the Emery deeds. The finding adverse to this claim is sustained by the evidence.

In their opening brief counsel for defendant in effect conceded that the Emery deeds conveyed the fee on the condition subsequent that the grantees would continue operation of

trains on the land conveyed, and that such operation ceased in September 1951. Their contention was that the reversionary rights were conveyed by the Oudin-Prescott deed. In their reply brief they shift their position. They there contend the Emery deeds conveyed easements and not the fee on a condition subsequent. ■ A question smuggled into a closing brief merits scant consideration. The point needs no discussion after *Highland Realty Co.* v. *City of San Rafael,* 46 Cal.2d 669 [298 P.2d 15]. The court there said (p. 677) :

■ ''It is of course true, as defendants point out, that 'A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended.' (Civ. Code, § 1105; *Elliott* v. *McCombs* (1941), *supra,* 17 Cal.2d 23, 28 [109 P.2d 329].) In the Elliott case a land company deeded to Rice a parcel of land, 'except the south 30 feet thereof reserved for road purposes,' and in concluding that the reservation was of only an easement rather than of the land itself the courts declared, quoting in part from *Parks* v. *Gates* (1921), 186 Cal. 151, 155 [199 P. 40], that 'there is a vast difference between a grant for purposes of ''right of way'' for a road and a grant of land ''to be used for a road.'' The latter grant may be entirely consistent with the conveyance of a fee-simple title, as a road may be maintained as readily on land held in fee as under an easement, but the grant of land as a right of way recognizes nothing but an easement. This rule was applied in *Cooper* v. *Selig,* 48 Cal.App. 228 [191 P. 983], where the court construed a deed conveying land to the city of Los Angeles for the purposes of a public road as passing the fee-simple title. Under the same principle of construction, the language in the deed of the land company to Rice conveyed a fee-simple title to him with the reservation of an easement on the part of the grantor. [Citations.]' ''

Applying this rule the court noted that the basic deed of 1875 from Hayes before it for construction was ''of a right of way 'upon, over, and along a strip of land,' '' and therefore concluded that the Hayes deed conveyed only an easement, and not the underlying land. The court then considered a deed from Hayes' successor, Magnesen, which conveyed ''A tract of land ten (10) feet in width adjoining and lying south of that portion of the right of way'' which Hayes had conveyed. The court said the language of the Magnesen deed ''indicates a distinction between the nature

and extent of the property interest or right he was conveying and that conveyed by the 1875 deed.'' In other words the Hayes deed conveyed an easement, the Magnesen deed conveyed the land. (Also see *Hannah* v. *Southern Pac. R. R. Co.,* 48 Cal.App. 517, 521 [192 P. 304].)

Under the rule, the Emery deeds conveyed the fee. The grants were not of land as a right of way. They were not of a right of way ''upon, over, and along a strip of land.'' They were grants of the entire land for the purpose of use as a way for an electric railroad. Two parcels conveyed by the 1901 deed were described as ''A strip of land 60 feet in width'' with metes and bounds descriptions. The two other parcels conveyed were described as ''A triangular piece of land'' in a designated quarter section with metes and bounds descriptions. The grantors reserved to themselves, their heirs and assigns, the right to establish and maintain across the ''parcels of land'' streets ''at such points as shall be designated upon any map or maps of subdivision of the lands belonging to the parties of the first part [the grantors] lying adjacent to the said strips and parcels of land hereby conveyed.'' The grantors also reserved to themselves, their heirs and assigns, the right ''to lay, construct and maintain private pipe lines for the conveyance of water across said strips and parcels of land and underneath the tracks.'' The grantee ''as a part of the consideration for this conveyance'' agreed that it, its successors and assigns, would construct and equip an electric railway from Los Angeles to Pasadena upon a line passing through the lands conveyed and continuously operate the same, and a branch line to Alhambra. The deed is replete with references to ''the land conveyed.''

The 1904 deed recites that Pacific Electric ''is now the owner of said described property [described in 1901 deed]'' and is desirous ''of acquiring additional ground''; as an inducement to the Emerys ''to grant to'' Pacific Electric ''said additional ground,'' it has entered into certain covenants and agreement ''hereinafter set forth.'' In the 1904 deed the Emerys granted ''First: A strip of land of irregular width [metes and bounds description] Together with the right to construct and maintain upon land adjoining the above described strip of land . . . side slopes.'' ''Second: A strip of land of irregular width [metes and bounds description] Together with the right to construct . . . side slopes'' on adjoining land. This deed is also replete with references to the ''land hereby conveyed'' and to the ''land

∴ ∴ conveyed'' by the 1901 deed. The only mention of a ''right of way'' is with reference to the use to which the grantee agreed to put the property. The point made for the first time in defendant's closing brief cannot be sustained.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1957.