[Civ. No. 24703. Second Dist., Div. One. Aug. 23, 1961.]

L. C. FAUS, Plaintiff and Appellant, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

Arthur S. Loveland for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Peyton H. Moore, Jr., Division Chief, Deputy City Attorney, Eldon V. Soper, Deputy City Attorney, E. D. Yeomans and James W. Obrien for Defendants and Appellants.

WOOD, P. J.—This is an action for the declaration of rights to a parcel of land (one strip 50 feet wide, and two strips—each 10 feet wide) formerly used as a right of way by defendant Pacific Electric Railway Company. Plaintiff claimed ownership of the strips on the alleged basis that he had acquired the reversionary interest. Defendant city claimed ownership by reason of a deed from defendant railway, allegedly conveying title except as to mineral rights. The judgment was that defendant city is the owner of the 50-foot strip, except the mineral rights; that defendant railway company is the owner of the mineral rights in the 50-foot strip; and that plaintiff Faus is the owner of an undivided 288/360 interest in the two 10-foot strips.

Plaintiff appeals from the portion of the judgment as to the 50-foot strip; and defendants city and railway company appeal from the portion of the judgment as to the two 10-foot strips.

About 1900 Andrew J. W. Keating was the owner of a large ranch in Los Angeles County known as Rancho Las Cienegas, which was in an area that is now the southwest part of Los Angeles. It may be stated generally that the property involved here is located in the center of Venice Boulevard, and extends from Highland Avenue to Cochran Avenue—a distance of 3,253.89 feet. The 50-foot strip is in the center of the street, and a 10-foot strip is on each side of the 50-foot strip.

Mr. Keating died in 1901. One parcel of land which he owned at the time of his death consisted of 179.77 acres which was a portion of the Gird Tract. The strips involved here were a part of that parcel.

On January 17, 1902, the executor of Mr. Keating's will obtained an order of court confirming a sale of the 50-foot strip to the Los Angeles Pacific Railroad Company (predecessor of defendant Pacific Electric Railway). The specific provisions of the order will be stated later.

On January 18, 1902, the executor executed a deed pursuant to the order confirming the sale. The specific provisions

of the deed, including the conditions of the grant, will be stated later.

Mr. Keating made provision for a testamentary trust. On September 27, 1904, an order was made distributing the estate, except a ranch in Chili, to the trustee named in the will.

On May 2, 1907, the trustees of the testamentary trust (other trustees having been appointed) obtained an order of court confirming a sale of the two 10-foot strips to the railroad company. The specific provisions of the order will be stated later.

On June 30, 1908, the trustees executed a deed pursuant to the order confirming the sale. The specific provisions of the deed will be stated later.

On April 1, 1910, an order was made (1) that the testamentary trust had terminated on December 21, 1909; and (2) that all the property in the trust became vested in three sons and two daughters of the decedent, and in the assignee of another son of the decedent. (The names of those persons were stated in the order.)

The operation of the railway ceased in December 1950.

On October 10, 1950, some of the vestees under the testamentary trust executed a quitclaim deed whereby they quitclaimed their interests in the strips to plaintiff. His purported interest by reason of such deed was 288/360 or 4/5.

On September 29, 1950, the city commenced an eminent domain action to acquire an easement for streets upon the property involved herein.

On January 19, 1956, the eminent domain action was dismissed.

On May 28, 1956, defendant railway company executed a deed which stated that the railway company conveyed the strips to defendant city (reserving mineral rights).

Plaintiff commenced this action on January 23, 1958.

It was stipulated that within one year after the execution of the deeds to the railroad company, the company entered into possession of the real property under and by virtue of the deeds, and built, equipped, maintained and carried on an electric railway on said real property in conformity with said deeds; that defendant railway company and its predecessors maintained and carried on an electric railway on said real property until December 1950, when the operation of all trains thereon ceased; that thereafter defendant railway company completed the removal of all tracks and ties on or before January 6, 1953, and since said date has not

built, equipped, maintained or carried on an electric railway over said property; that about August 1952, the fences referred to in the deeds to the railroad company were removed; and that immediately thereafter right of way markers were placed along the boundaries of said property by defendant railway company or its predecessors.

Plaintiff contends that the deeds with respect to the 50-foot strip and the two 10-foot strips conveyed only easements for railroad purposes; or, that the deeds conveyed fee simple title with condition subsequent, which condition had not been satisfied, and upon abandonment of the strips for railroad purposes the title vested in plaintiff Faus (who allegedly had obtained the reversionary interests).

Defendants contend that the deeds to the strips conveyed fee title to the railroad company, upon a condition subsequent (with respect to building and maintaining a railway within a year); that the condition had been satisfied; that the city is the owner of the fee title of the strips, except the mineral rights therein; that the defendant railway is owner of the mineral rights.

The court found, among other things, as follows: The executor's deed to the railroad company, with respect to the 50-foot strip, conveyed the fee simple title subject to a condition subsequent, which condition was fully satisfied. The railroad company complied with the condition in the deed with respect to building and maintaining a railway within a year. The defendant city is the owner in fee simple of the 50-foot strip (as against plaintiff), except the mineral rights therein. That the defendant railway company is the owner of the mineral rights in the 50-foot strip. Plaintiff Faus has no interest in that strip. The trustees' deed to the railroad company, with respect to the two 10-foot strips, conveyed an easement for railroad purposes, which easement terminated when railroad operations across the property ceased on January 6, 1953. Plaintiff Faus is the owner in fee simple of an undivided 288/360 interest in the two 10-foot strips, as against defendants city and railway company.

The court also found that the deed to Title Guarantee and Trust Company (from the vestees upon termination of the trust) conveyed no interest in the two 10-foot strips.

The judgment was in accordance with the findings.

In construing a deed the governing factor is "the intention of the parties as gathered from the whole instrument." (*Basin Oil Co.* v. *City of Inglewood*, 125 Cal.App.2d

661, 663 [271 P.2d 73].) ■ "Under the rules of construction the whole instrument must be read together to determine the effect of a deed . . . ." (*Parks* v. *Gates*, 186 Cal. 151, 154 [199 P. 40].) ■ In the present case, the orders confirming the sales of the strips are to be considered in construing the deeds. "A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended. (Civ. Code, § 1105)." (*Basin Oil Co.* v. *City of Inglewood, supra*, p. 664.) ■ The deed with respect to the 50-foot strip included statements, as follows:

"This Indenture . . . between Alfred Vincent Keating the . . . executor . . . and The Los Angeles Pacific Railroad Company . . . Witnesseth: That Whereas the . . . Executor . . . did . . . *sell* unto said party of the second part, for . . . Five Hundred Dollars . . . the real property . . . described, and . . . Whereas, the . . . Court . . . upon . . . return of . . . said *sale* . . . did . . . make an order confirming said *sale* and . . . a certified copy of which Order . . . was recorded in . . . Los Angeles County . . . in which the said land *sold* is situated . . . Now Therefore the said . . . Executor . . . for and in consideration of . . . $500.00 . . . has granted . . . *sold* and conveyed, and does . . . grant . . . *sell* and convey . . . *forever,* all the right, title and interest of the said Andrew J. W. Keating, deceased, . . . in or to all that certain . . . parcel of land situate . . . in the County of Los Angeles . . . described as . . .

"A strip of land 50 feet in width, the center line of which is described, as follows: [detailed description, including statement that the strip is 3253.89 feet in length and contains 3.73 acres].

". . . *To have and to Hold,* all and singular the above described premises . . . unto the said party of the second part, its successors and assigns *forever,* subject, however, to the following conditions, to wit:—

"First: That if the party of the second part fails to build, equip, maintain and carry on an electric railway over said strip of land, within one (1) year from the date hereof, the title of said land is to revert to the estate . . . and said estate . . . shall be relieved from any obligation . . . to restore the $500 this day paid.

"Second: That the party of the second part will immediately erect and forever maintain upon said *right of way,*

and along each side thereof, a good and substantial four (4) wired fence . . . and will, also . . . where a farm road now crosses said *right of way,* put in and maintain a good and substantial crossing and cattle guards so as to permit free . . . ingress and egress over said *right of way.*'' (Italics added.)

The order of court confirming the sale of the 50-foot strip, which was entitled, ''Order Confirming *Sale* of Real Estate,'' included statements as follows: ''. . . the Executor . . . having . . . filed . . . the return of his proceedings of the private *sale* by him made . . . and it having been proved . . . that upon the filing of said . . . account of *sale,* the Clerk . . . caused proper notice of the time and place of . . . said *sale* to be posted . . . for a period . . . in which notice the lands . . . to be *sold* . . . were described . . . as follows to-wit:

''All that certain . . . parcel of land situate . . . in the Rancho Las Cienegas, County of Los Angeles . . . described as follows: towit: A strip of land 50 feet in width . . . [detailed description].

''That the said lands are wholly un-improved, and are taken out of a large un-improved field . . . and that the building of the Railroad *for the right of way* for which the said lands are deeded, will result in great benefit to the remaining lands in said neighborhood belonging to said estate. That at such *sale,* the Los Angeles-Pacific Railroad Company . . . became the *purchaser for said real estate* . . . for . . . Five Hundred Dollars ($500.00), which is the full value of the lands sold . . . Wherefore, It is . . . Ordered . . . that the said *sale* be . . . confirmed . . . and the proper . . . conveyance . . . is hereby directed to be executed to the *purchaser* by said Executor, subject to the following conditions, towit: . . . . [The conditions here stated are the same conditions stated in the deed, above set forth,—the conditions with respect to building and maintaining a railway within a year; and building a fence.]'' (Italics added.)

It thus appears that the deed (to the 50-foot strip) is the usual form of deed used in conveying fee title. The recital or ''Whereas'' portions of the deed use the words ''sell,'' ''sale,'' and ''sold.'' The granting clause uses the words ''sold'' and ''sell,'' and that clause also states that the executor ''does . . . convey . . . forever, all the . . . title . . . of the . . . deceased.'' The first condition set forth in the deed, with reference to building and maintaining a railroad within a year, includes a provision that if the condition

is not complied with "the *title* of said land is to revert to the estate." (Italics added.) The use of such words indicates an intention to convey the fee title with condition subsequent. The order confirming the sale of the 50-foot strip states, in the heading thereof, "Sale of Real Estate"; and in the body of the order the words "sale" and "sold" are used, and it is also stated therein that the railroad company "became the purchaser for said real estate." The deed and the order indicate that the consideration for the deed (made in 1902) was not a nominal consideration but was substantial—the deed and order stated that the consideration was $500, and that the strip contained 3.73 acres; and the order stated further that the right of way would "result in great benefit to the remaining lands in said neighborhood belonging to said estate."

The words "right of way" are used in the last part of the deed wherein the second condition is stated—the condition to the effect that the railroad company would erect a wire fence along each side of the "right of way." Also, those words were used in the order confirming the sale—at the place therein where the same condition regarding the fence was stated; and also at the place therein where it was stated generally that the lands were in a large unimproved field, and "the right of way" would result in great benefit to the remaining lands. It is apparent that the words "right of way," as used in the deed and order, were descriptive of the strip, and were used to designate the place where the fence was to be erected, and to identify what it was that would result in great benefit to the remaining lands. In view of the whole context of the deed and order, it cannot reasonably be concluded that those words were used to indicate that an easement was intended. The trial court did not err in finding or concluding that the deed conveyed fee title to the 50-foot strip, subject to a condition subsequent.

The condition subsequent was the condition embodied in the provision: "That if the party of the second part fails to build, equip, maintain and carry on an electric railway over said strip of land, within one (1) year from the date hereof the title of said land is to revert to the estate of Andrew J. W. Keating, deceased: . . . ." It was established that the railroad company (grantee) did build, equip, maintain, and carry on an electric railway over the strip within one year from said date. Plaintiff Faus argues, however, that the pro-

vision should be interpreted to mean that the railway was to be built and equipped within one year and thereafter it was to be maintained and carried on indefinitely. The trial court did not err in rejecting such interpretation, and did not err in finding that the condition had been fully satisfied.

The deed from the trustees to the two 10-foot strips included statements, as follows:

"This Indenture Made . . . [June 30, 1908] between trustees under the will . . . of Andrew J. W. Keating . . . and the Los Angeles Pacific Railroad Company . . . .

"Witnesseth: That whereas, the late trustees . . . made a return of . . . private *sale* made by them . . . .

"And whereas, the . . . court . . . did . . . make an order confirming said sale and directing a conveyance to be executed, . . . a certified copy of which order . . . was recorded in . . . the County of Los Angeles . . . within which the said property *sold* is situated . . . .

"Now, Therefore, the parties [trustees] . . . in consideration of . . . $1867.51 . . . have granted . . . *sold* and conveyed and . . . do grant . . . *sell* and convey unto the said party of the second part [railroad company] all the right, title, interest and estate of the said . . . deceased . . . in and to that real property situate . . . the County of Los Angeles . . . being described as follows to wit:

"A strip of land ten (10) feet wide, contiguous to the northerly boundary, and another strip of land Ten (10) feet wide, contiguous to the southerly boundary of that certain *right of way* granted by Alfred Vincent Keating, executor, to the Los Angeles Pacific Railroad Company, which grant was confirmed by order of said Court entered January 17, 1902 . . . and, the deed for which is recorded in Book 1529, page 233 of Deeds . . . reference being hereby made respectively to said final order of distribution and to said deed for more particular description of the strip of land fifty feet (50) wide heretofore conveyed . . . for railroad purposes, and sold subject to the same conditions as said prior strip of land was sold to all intents and purposes as if said original *right of way* were ten (10) feet wider on each side than as described.

"To Have and To Hold . . . for railroad purposes, unto the said party of the second part, its assigns and successors forever."

The order of court confirming the sale of the two 10-foot strips was entitled "Order Confirming Sale of Right of Way

for Railway Purposes." The order included statements, as follows: The "trustees under the will . . . having made . . . the return of their . . . private *sale* . . . .

"And it duly appearing . . . that . . . the clerk . . . caused . . . proper notice of the time and place of hearing the return of said *sale* to be posted . . . in the County of Los Angeles . . . in which the land ordered to be *sold* is situated . . . in which notice the lands . . . to be *sold* were described . . . as follows, to-wit: . . . [Description here is the same as in the deed, above set forth.] [Italics added.]

"And it further appearing that said lands are wholly unimproved . . . and that the building of the railroad and the use of said *right of way* will result in benefit to the remaining lands belonging to the estate; That at said *sale* the Los Angeles Pacific Railroad Company . . . became the purchaser of the *right of way* . . . for . . . $1867.50, which is the full value of the property sold; . . . [Italics added.]

"Wherefore, it is . . . ordered . . . that the said sale be . . . confirmed . . . and that the proper . . . conveyance of said property for *railway purposes* is hereby directed to be executed to the said purchaser . . . subject to the same conditions as the prior strip of land . . . to all intents and purposes as if the said original right of way were ten (10) feet wider on each side than as previously described in said former grant of right of way." (Italics in deed have been added.)

The trial court stated in its memorandum opinion that the deed and the order, with respect to the two 10-foot strips, refer to the original 50-foot strip as a "right of way," but, even though such reference cannot affect the title to the 50-foot strip it may be used in determining the intention of the parties with respect to the two 10-foot strips. The memorandum also refers to the expression, "for railroad purposes," appearing therein. The trial judge concluded that from all the language used and from all the facts and circumstances, it should be concluded that the deed, with respect to the two 10-foot strips, did not convey fee title, but created an easement for railroad purposes. The court did not err in finding that such an easement was created.

 On September 12, 1910, after the testamentary trust property had vested in the sons, daughters, and assignee, as above mentioned, those vestees executed a deed, covering all the property received from the trust, wherein they (vestees) were grantors and the Title Guarantee and Trust Company was grantee.

That deed to the title company also included all property in California belonging to or acquired by those grantors as heirs or devisees of the "estates" (Mr. and Mrs. Keating) even though such property is not specifically described in the deed.

That deed also stated: "Together with all . . . tenements, hereditaments and appurtenances . . . and the reversion and reversions, remainder or remainders, rents, issues and profits thereof."

One of the parcels of property described in that deed to the title company was 179.77 acres of the Gird Tract which included the land involved herein. After the description of that parcel, the deed contained the following provision: "Excepting from the . . . above described portion of the Gird Tract, a strip of land seventy (70) feet wide conveyed to the Los Angeles Pacific Railroad Company by instruments recorded respectively in Book 1529, page 233 of Deeds, and in Book 3059, page 104 of Deeds, Recorder's Office of Los Angeles County." (The first of those recorded instruments was the deed to the 50-foot strip; and the second one was the order confirming sale of the two 10-foot strips.)

It appears that the grantors executed declarations of trust in connection with the deed to the title company, with the result that the conveyance to the title company was in trust.

The defendants city and railway company assert that the deed to the title company conveyed any interest of the grantors in the land involved here. Defendants state in their brief the trial judge received extrinsic evidence relative to provision in the deed "excepting" the 70-foot strip. Defendants state that this "parol evidence" consisted of five instruments out of a trust formerly held by the Title Guarantee and Trust Company, being contemporaneous declarations to the title company executed by the vestees of the testamentary trust. The instruments were offered in evidence by defendants and were received. Some of the instruments include statements to the effect that the deeds (or deed) to the title company conveyed all the real property of the Keating Estate to the title company. Some of the instruments stated that although the deed to the title company was absolute in form, it was made for the purpose of creating a trust affecting all of the estate property. A similar exception was involved in *Faus* v. *Pacific Electric Ry. Co.*, 146 Cal.App.2d 370 [303 P.2d 814]. It was held therein that the reversionary interest was within the exception. (See

pp. 373 to 376.) In the present case, the trial judge said, in his memorandum opinion, that he was "unable to adopt a purported intent on the part of the Keating heirs contrary to the express exception" and he believed "it is more logical to say that the other references in the deed and in the other documents above referred to were not intended to include in the deed what was specifically and unequivocally excepted from the deed." The trial court did not err in impliedly finding that the deed to the title company did not convey the reversionary interest.

■ Defendants also contend that plaintiff's action is barred by section 320 of the Code of Civil Procedure. That section provides: "No entry upon real estate is deemed sufficient or valid as a claim, unless an action be commenced thereupon within one year after making such entry, and within five years from the time when the right to make it descended or accrued." The operation of the railway ceased in December 1950, and the tracks and ties were removed on or before January 6, 1953.

On September 29, 1950, the city commenced an eminent domain action to acquire an easement for streets upon the property involved herein.

On October 10, 1950, some of the vestees under the testamentary trust executed a quitclaim deed whereby they quitclaimed their interest in the strips to plaintiff Faus. That deed was recorded on January 19, 1951.

On March 27, 1952, plaintiff sent a letter to defendant railway demanding that said defendant "quiet title" to said strips "in L. C. Faus." On May 15, 1952, defendant railway sent a letter to plaintiff stating that it refused to quiet title to the property.

On August 30, 1954, plaintiff Faus filed an answer in the eminent domain action. He had not been named as a defendant therein. In his answer he alleged that he was owner of the strips.

On January 19, 1956, the eminent domain action was dismissed.

On May 28, 1956, the defendant railway executed a deed which stated that the railway conveyed the strips (50-foot and two 10-foot strips) to defendant city (reserving mineral rights).

Taxes on the strips were assessed to defendant railway for the years from 1950 to 1957, but the taxes were not paid. On September 11, 1957, plaintiff caused the taxes to be placed

on an installment redemption plan; and on that day he paid the first installment of $931.14. Taxes for 1957-1958 were assessed to "L. A. City c/o Mr. L. C. Faus." He paid the taxes for that fiscal year in the amount of $5,138.18.

This action was commenced on January 23, 1958.

The answer of Faus in the city's eminent domain action presented the issue that he was owner of the strips. From the time that he filed that answer to the time the action was dismissed, he was not required to file another action to present the same issue as against the city. In *Marden* v. *Bailard,* 124 Cal.App.2d 458 [268 P.2d 809], it was said at page 465: "While that litigation was pending these plaintiffs were not required to commence another action—their declaratory relief action—for the determination of the same issue." It was not established that either defendant was in adverse possession after the rails and ties were removed. (See *Faus* v. *Pacific Electric Ry. Co., supra,* 146 Cal.App.2d 370 [303 P.2d 814].) The letter from defendant railway to Faus (refusing to "quiet title" in Faus) was sent on May 15, 1952, before such removal. The present action was not barred by the statute of limitations.

 The defendants city and railway company have made an application to produce additional evidence on appeal. The evidence which they seek to produce is a written claim by plaintiff Faus for refund of taxes which he paid on the property involved here. Said defendants assert that claim is material because it states, as grounds for the refund, that the taxes were erroneously collected in that the assessment and tax thereon were upon property owned by and standing in the name of the city of Los Angeles. Attached to the claim for refund, as evidence of the city's title, is a copy of the deed, dated May 28, 1956, from the railway company to the city covering the three strips of land. The claim was verified The defendants contend that the claim for a refund is a disclaimer of any right, title, or interest in the property involved herein.

Plaintiff Faus, in opposition to the application, asserts in effect that the circumstances under which he made the claim for refund show that his statement as to the city's ownership was intended to be given consideration only in case the final determination of these appeals held that he had no interest in the strips. He also states that a notice of tax sale of the property had been published in 1960, and that in order to prevent the tax sale he was forced to pay all taxes and penal-

ties (in December 1960) for the years 1950 through 1960 in the amount of $11,789.07. An affidavit of Mr. De Flon, deputy county counsel, who had supervision of the tax refund application, disclosed that the county had full knowledge of the dispute between the plaintiff and the defendants, and that the county took no action in reliance on the statement that the city owned the property.

Also, in response to defendants' application to produce additional evidence, the plaintiff Faus made an application to produce additional evidence showing that the city made an application in 1960 to purchase the strips at tax sale. Plaintiff Faus asserts that such application by the city to purchase the property is a disclaimer by the city of all right, title, and interest in the property.

It is apparent that the applications of the parties to present additional evidence relate to matters occurring about two years after the trial—which matters were outside the judicial proceeding. It is apparent also that many factual issues would be involved in determining whether the documents (proposed as additional evidence) constituted disclaimers. The applications to produce additional evidence are denied.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

The petition of defendants and appellants for a rehearing was denied September 18, 1961, and the petitions of plaintiff and appellant and of defendants and appellants for a hearing by the Supreme Court were denied October 17, 1961.