[No. 12420.   In Bank. — February 23, 1889.]

## JOHN GRENNAN, Appellant, v. RUTH McGREGOR ET AL., Respondents.

Deed — Reservation of Branch Railroad. — A deed by a railroad company of a half-section of land, "excepting and reserving, however, for railroad purposes, a strip of land four hundred feet wide, lying equally on each side of the track of the railroad of said company, or any branch railroad now or hereafter constructed on said lands," operates to reserve a strip of land within two hundred feet on each side of a side-track which had been constructed and was in use in connection with a railroad station at the date of the deed, and which was the only piece of road that could satisfy the words "branch railroad now constructed."

Id. — Construction — Judicial Notice — Ambiguity — Intention of Parties. — The court takes judicial notice of the true signification of all English words and phrases, and may resort for aid to any appropriate books of reference. But a word or phrase may be of such ambiguous import that its meaning cannot be determined without reference to the circumstances surrounding the parties who used it at the date of the transaction, and in such case the court will look to such surrounding circumstances to ascertain the intention of the parties.

Appeal from a judgment of the Superior Court of Placer County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Wallace & Prewett*, for Appellant.

*Hale & Craig*, for Respondents.

The existence of a branch railroad does not depend either upon its length or direction, but upon the fact whether it actually is a distinct section, subdivision, or part of the railroad system. (*McAboy's Appeal*, 107 Pa. St. 548; *Volmer's Appeal*, 115 Pa. St. 166.)

Beatty, C. J. — This is an action to recover a small parcel of a certain half-section of land in Placer County, which was conveyed to the plaintiff January 14, 1884, by the then owner, the Central Pacific Railroad Company. The deed of conveyance contained the following reservation: "Excepting and reserving, however, for

railroad purposes, a strip of land four hundred feet wide lying equally on each side of the track of the railroad of said company, *or any branch railroad now or hereafter constructed on said lands.*"

The defendants are lessees of the successor of the Central Pacific Railroad Company,—plaintiff's grantor, —and the whole controversy turns upon the question whether the demanded premises are within the reservation of the deeds to plaintiff. The superior court, holding that they were included in the reservation, gave judgment for defendants, from which, and from an order denying his motion for a new trial, plaintiff appeals.

It is agreed that the following facts were established by the evidence taken at the trial: "That the said railroad company was on January 14, 1884, and for many years prior thereto, and ever since, up to the date of the lease hereinafter mentioned, has been, the owner and operator of a railroad running from San Francisco, California, to Ogden, Utah; and said railroad traverses the east half of said section, and that on said half-section was and is situated the station known as Clipper Gap station. That along the side of the main track of said railroad at said station, the said company had and have constructed a switch, lying on the easterly side of the main track, of the length of about fifteen hundred feet; that said switch is appurtenant to and used wholly for and with said station.

"That along the opposite side or westerly of said main track, there extends and runs a track called by the plaintiff a spur or side track, and by the defendant a branch railroad.

"That said last-mentioned track commences at a point below said station's office, distant about six hundred feet, and at or near the point at which the said switch commences, and runs up alongside the main track, but not quite parallel thereto, and extends a distance of about

thirteen hundred feet, and abruptly terminates; that at its furthest point from the main track it is over three hundred feet therefrom; that it is used by said railroad company for conducting its business as a common carrier, and is necessary for such use.

" The cost of constructing the said last-described track was not less than two thousand five hundred dollars.

"That there is no station on the same; that all the freight that is ever handled thereon is such as is consigned to said Clipper Gap station, and that it is only when it is so consigned in car-load lots that it is run out on the said track to be unloaded; that all freight so run out and unloaded is formally received and receipted for at said Clipper Gap station; that freight received at said station is unloaded from the main track when in less than car-load lots, and from said thirteen-hundred-foot track when in car-load lots, and shipments from said Clipper Gap station are usually made in the same way; that passenger trains never run on or over the same; that there are no stations or offices thereon; that there is not and never has been any schedule of fares and freights for said track; that freight and passengers, or either, are never received on said track for consignment or shipment to any point thereon; that at the time of the construction of said track, and the execution of said deed on January 14, 1884, there was not on the line of said track any warehouse or place of business, or any place or house to which freight was carried; that since the execution of said deed a box-factory has been built thereon, and that freight is now sometimes carried to the same, but that it is always consigned to said station; that all other freight, when carried out on said track for unloading, is unloaded direct from the cars to wagons; that no cars or engines belong to said track; and that trains are never run on said track from one objective point to another, and only move about thereon to facilitate unloading or loading; that occasionally

empty freight-cars are run out thereon and are left there to be loaded with freight, and when so loaded, are run down on the main track and into trains and carried away.

"That there is a large and deep cut just above said station, commencing about one hundred feet above the station office and extending a long distance up the track; that by reason of the existence of said deep cut it is impracticable for a switch to be run on the westerly side of said main track at said station, and again connect with said main track at any point above said point one hundred feet above said station, without the same should be extended across a deep ravine at great expense, or without said deep cut should be made very much wider; that by reason of these facts, it is impracticable to make a switch or to extend a track out on the said westerly side of said main track at said station, unless the same is made to run about on the site of said track that is in this action claimed by plaintiff to be only a spur.

"That in all particulars said last-mentioned track is used only in connection with said station and main road, and never separately and independently therefrom. It is admitted that the leases pleaded in the answer were in fact executed as therein set out, and that if said Central Pacific retained or has any right to the premises in controversy, the same has passed to and belongs to defendant McGregor. The price and consideration paid by plaintiff for the land conveyed to him by the Central Pacific Railroad Company by means of the deed hereinbefore referred to was the sum of $450, and no more."

The premises in controversy are not within two hundred feet of the main line of the railroad, but are within two hundred feet of the track on the west side of the main line, which is "called by the plaintiff a spur or side track, and by the defendant a branch railroad."

It is not contended that the following words in the

above-quoted reservation, viz., "the track of the railroad of said company," included anything except the main line of the road, exclusive of side-tracks, switches, etc., and therefore the specific point to be determined is the proper meaning of the phrase "branch railroad" as employed by the parties to the deed. If these words in this collocation had any certain, precise, and generally accepted meaning, the case would present no difficulty, for we take judicial notice of the true signification of all English words and phrases, and may resort for aid to any appropriate books of reference. (Code Civ. Proc., sec. 1875.) But we cannot find this phrase anywhere accurately defined, and although each of the words composing it has a sufficiently exact meaning, the question debated by counsel still remains whether the idea expressed by the combination embraces something more or something less than the word "railroad" standing by itself, — whether, in other words, a branch railroad must be not only a branch of a main line, but must also have all the elements of a separate road, as termini, and a freight and passenger traffic between its termini, or whether, being a branch of another road, it need have no distinct termini or traffic of its own.

We find ourselves unable to say, as a general proposition applicable to all cases, which of these ideas is the correct one, and must therefore hold that the parties to this deed have used a phrase of such ambiguous import that its meaning cannot be determined without reference to the circumstances surrounding them at the date of the transaction. (Civ. Code, sec. 1647.)

Looking, then, to the surrounding circumstances, and especially to the fact that this branch or spur on the west side of the main track at Clipper Gap station, constructed and in use at the date of the deed, was the only piece of road within the tract conveyed that could satisfy these words of the reservation, "branch railroad now constructed," and considering that while the whole

price of the tract conveyed was only $450 the cost of this section of railroad was at least two thousand five hundred dollars, we are forced to the conclusion that by the words "branch railroad now or hereafter constructed," the parties to this deed intended to, and did, include the branch or spur referred to, and that the superior court did not err in its decision.

Judgment and order affirmed.

McFARLAND, J., SHARPSTEIN, J., THORNTON, J., and PATERSON, J., concurred.