[Civ. No. 24479.   Second Dist., Div. Three.   Dec. 20, 1960.]

L. C. FAUS et al., Appellants, v. PACIFIC ELECTRIC
RAILWAY COMPANY (a Corporation), Respondent.

Arthur S. Loveland for Appellants.

E. D. Yeomans and James W. O'Brien for Respondent.

SHINN, P. J.—The present action is by L. C. Faus and wife against Pacific Electric Railway Company and others, seeking a judgment that plaintiffs are the owners in fee and entitled to possession of property occupied and used by the railway as a right of way for its electric cars and trains. Possession of the land also is sought or in the alternative the value thereof, claimed by plaintiffs under the doctrine of inverse condemnation. The case was tried upon stipulated facts. The judgment was in favor of the defendant and plaintiffs appeal. The rights to be adjudicated upon appeal are only those of plaintiffs and the railway. Plaintiffs sue as assigns of the original grantors of the lands involved and they claim that the interests of the railway in the strips of land have reverted to them. Plaintiffs concede that they cannot be awarded possession and contend only that they should be given damages equivalent to the value of their interests in the several parcels.

The first question involves the construction to be given to four deeds conveying strips of land to the railway's predecessor, all of which contained provisions for reversion of title in the respective grantors in the event the agreements, covenants and conditions stated in the deeds should be violated or unperformed by the railway. The system was installed and was operated from about 1906 until September 1951 for the conveyance of passengers and freight. In the latter year

passenger service by rail was discontinued and the railway substituted therefor on highways adjoining the right of way a bus system of transportation, which has been continued in operation. The rail system is still used for carrying freight. The demands of plaintiffs are founded upon their assertion that discontinuance of passenger transportation by rail constituted a breach of the conditions of the several deeds, which effected a reversion of title.

The right of way extends through the Bradbury Ranch and the town of Duarte. All four deeds were executed the 4th day of May, 1906. We shall refer to them by number. The grantor in the first to be mentioned (No. 1) was Bradbury Estate Company, a corporation; in Numbers 2 and 3, Lewis Bradbury; in Number 4, Louisa Bradbury, executrix of the estate of Lewis Bradbury, deceased.

Deeds 1, 2 and 3 read: "Grantor doth hereby grant to said party of the second part a right of way for the establishment and operation of a railroad over and along those certain pieces or parcels (description)"; deed Number 4 granted the land, not merely a right of way. With certain exceptions to be noted the deeds all contained the following provisions: "This conveyance is made upon and subject to all and every one of the following covenants, agreements and conditions, . . . namely : . . ."

"Said party of the second part covenants and agrees that all of the estate herein granted shall be held, enjoyed and used for the maintenance and operation of a railroad to be operated by electricity or some motive power other than steam, such motive power, however, to be no more objectionable than electricity.

"Said party of the second part covenants and agrees with all reasonable dispatch to construct upon the said right of way a roadbed of sufficient width for a double track railroad, and upon completion thereof, to maintain and operate regular passenger cars thereover. . . ."

"Said party of the second part agrees in the construction of its said railroad, and during the maintenance and operation thereof, to provide and maintain all road or farm crossings, and all culverts, for irrigating ditches and natural water courses across said right of way. . . ."

"It is further expressly covenanted and agreed by said party of the second part, for itself, its successors and assigns that upon the failure of the said party of the second part, its successors or assigns, to fully and promptly observe, perform

or carry out any one or more or any part of the covenants and conditions hereinbefore recited, whether positive or negative, then upon such failure or upon any failure in that respect, the estate acquired by this conveyance by said party of the second part, its successors or assigns, in and to all and every part of the real property hereinabove described, shall be forfeited to said party of the first part, its successors or assigns, and the possession and right to the possession of all and every part of said property shall revert to and revest in said party of the first part, its successors or assigns, clear of all claims or encumbrances by reason of any act of said party of the second part, its successors or assigns. . . .''

In deed Number 1, the grantee covenanted and agreed that within six months after commencing operations it would construct upon a site to be conveyed to it by the grantor a passenger depot to cost not less than $300. ''And, said party of the second part covenants and agrees that it will stop all of its passenger cars or trains, except special or limited cars or trains, on signal, to receive and discharge passengers at said depot.''

There was no habendum clause in any of the deeds except Number 4 deed which read: ''To have and to hold the estate hereby granted in the above described premises, together with all the appurtenances unto said party of the second part, its successors or assigns forever.''

In deed Number 2 the grantee covenanted and agreed that during such period of time as the grantor remained the owner of (description) it would stop its passenger cars or trains on signal at Oak Street in Duarte and build and maintain a stairway and bridge over its tracks at Oak Street.

■■■ The trial court held that the obligation of the railway to maintain passenger service was not a condition subsequent, but merely a covenant which had been complied with and kept by the construction of the system and the maintenance of passenger service for some 45 years. We are unable to agree with this interpretation of the deeds. If the obligations assumed by the grantee had been fully performed it was immaterial whether they constituted covenants or conditions. If the deeds clearly expressed the intention of the parties that discontinuance of passenger service would effect a reversion of title, the railway took title upon condition subsequent. (*Streicher* v. *Heimburge,* 205 Cal. 675 [272 P. 290].) ■■■ It is the intention of the parties gathered from the entire instrument, rather than descriptive terms, that determines whether

an obligation constitutes a mere covenant or a condition. The obligation of the railway to maintain passenger service for as long as it used the rights of way was clearly a condition subsequent.

When Pacific Electric inaugurated its electric railway system it undertook to furnish regular passenger service to the areas through which its lines were extended. These included ranch properties of considerable size. Later, when the railway found it necessary to discontinue passenger service, but to maintain freight service, it found itself in difficulty. It had received rights of way under deeds which provided for reversion of title to the grantors in the event that it failed to meet the obligations cast upon it by the respective deeds. Litigation resulted. Two typical cases are *O. T. Johnson Corp.* v. *Pacific E. R. Co.,* 19 Cal.App.2d 306 [36 P.2d 368] and *Rosecrans* v. *Pacific Elec. Ry. Co.,* 21 Cal.2d 602 [134 P.2d 245]. In each case the grantors owned large acreage in rural districts and their principal purpose in granting rights of way was to obtain passenger service for their properties. In the deeds the railway obligated itself to provide regular and daily passenger cars or trains which would stop at designated points. It also agreed to install and maintain such protective measures as fences, culverts, drainage facilities, suitable grades and crossings and suitable means of entry and departure from its cars and trains. In each case the deeds contained customary general provisions for reversion of title substantially the same as are to be found in the Bradbury deeds.

In the Johnson and Rosecrans cases the land owners sought judgment that title to the respective rights of way land had reverted by reason of the abandonment of passenger service, notwithstanding the continued use of the lines for freight transportation.

In *Johnson,* judgment on demurrer in favor of Pacific Electric was affirmed. The railway, on the present appeal, relies upon that decision. In *Rosecrans,* the Supreme Court reversed a judgment in favor of Pacific Electric upon the sustaining of its demurrer. Appellants herein rely upon the Rosecrans decision. As we shall see, the respective deeds in those cases differed in material particulars from each other and from the Bradbury deeds with respect to the maintenance of service and the forfeiture provisions.

All the deeds provided that upon the failure of the grantee to observe, perform and carry out any one or more or any part of the covenants and conditions stated, whether positive or

negative, title would revert to and revest in the respective grantors. Given literal interpretation these general provisions did not distinguish between cessation of passenger service and failure to maintain drainage facilities, or breach of other minor obligations of the railway.

In *Johnson* there was no specific provision for reversion of title in the event passenger service should be discontinued. There was, however, the following provision: "It is understood that the strip of land herein conveyed shall be used for railroad purposes only, and in the event the party of the second part, its successors or assigns, shall, for a period of six months, cease to use said land for railroad purposes, then and in that event the title to said land shall ipso facto revert to and revest in said parties of the first part, their successors or assigns" etc. From this provision the court concluded that the grant was for "railroad purposes," and did not require continued operation of passenger service. Since the land was still being used for railroad purposes there was no forfeiture of title. There is no similar provision in the Bradbury deeds. The holding in *Johnson* does not aid respondent.

In *Rosecrans* mention was made of several minor promises among the railway's obligations which were said to indicate that the parties contemplated a permanent operation of the railway, but, as the court also stated, railroads are not created for mere temporary use. The decision that Pacific Electric had an obligation to maintain passenger service for as long as it used the right of way was based upon a provision of the deed that "said cars or trains shall so stop as long as second party or assigns shall operate the (aforesaid) railway." The court observed that this imposed upon the railway an obligation for continued passenger service. The line was still being used for the hauling of freight. The discontinuation of passenger service was a breach of a condition of the grant.

Although the Bradbury deeds did not specifically require that passenger service should be maintained for as long as the right of way was used for railroad purposes, such an obligation was clearly implied. Passenger service, not merely freight service, was what the grantors contracted for as consideration for their deeds. Cessation of passenger service was a clear violation of the major condition under which the railway held title to the rights of way.

In addition to its defense that it had fulfilled its obligations under the deeds, which prevailed in the trial court, the railway pleaded other and independent defenses which it relied

upon at the trial. The court made no decision with respect to these defenses and no findings thereon. It is contended by the railway that these defenses, which we shall now discuss, were established by the evidence and, of themselves, furnish independent grounds for affirmance of the judgment.

The railway has a right to maintain on the appeal that even if the judgment in its favor was based upon erroneous findings and conclusions it should nevertheless be affirmed if either of its other defenses was established. (Code Civ. Proc., § 956.) But the other defenses would have to be established as a matter of law to warrant affirmance of the judgment and neither of those pleaded presents a pure question of law. They involve factual issues which must be decided in a trial court.

In its answer to the amended complaint, Pacific Electric denied that title to any of the lands had reverted to plaintiffs. The land conveyed by deed Number 4 was much larger than the strips conveyed by any of the other deeds. The proof respecting this parcel was that it was a part of a parcel containing some 1,900 acres which was conveyed May 3, 1904 by the five Bradbury children to Bradbury Estate Company; March 3, 1906, the Estate Company conveyed it to Lewis Bradbury, and on May 6, 1906, Lewis Bradbury executed in favor of the railway's predecessor a deed to the land described in deed Number 4. On February 26, 1912, Lewis conveyed the 1,900 acres to North American Venture Company, a corporation; April 5, 1917, North American conveyed the land to Bradbury Estate Company; April 15, 1931, the estate company executed a trust deed on the land in favor of Security First National Bank; December 14, 1934, following foreclosure, the land was sold. October 11, 1951, Louisa Bradbury, as executrix of the estate of Lewis, quitclaimed to plaintiffs all the right, title and interest of the estate in said land.

There was evidence that in the March 3, 1906 deed of Bradbury Estate to Lewis, and in all the deeds that followed, to and including the trust deed to the bank, there was an exception reading as follows: "Except such portions thereof as are now included in rights of way for railroad purposes and in established roads and highways." Pacific Electric contends that the deed of Lewis to North American of February 26, 1912, conveyed the reversionary interest in the right of way strip and that that interest eventually was vested in Security First National Bank, as a consequence of which Louisa, as executrix of the estate of Lewis, had nothing to convey to Faus.

The court declined to determine whether a reversionary interest passed under the several deeds or was eventually vested in the estate of Lewis. Pacific Electric contends that the determination of this question was one of fact for the trial court, whereas Faus contends, that as a matter of law, there was an exception of the reversionary interest, that the same eventually became vested in the estate of Lewis and was conveyed by the deed of the executrix of his estate. We are of the opinion that conflicting inferences as to the intentions of the parties could be drawn from the wording of the exception, and that it was error for the court to refuse to decide that issue as one of fact.

Lewis Bradbury was president of North American and there was no evidence whether he was the sole owner of the corporation. It was a question of fact whether it was the intention of Lewis to retain the reversionary interest in the 1,900 acres in his conveyance to North American and it appears that the ownership of the corporation might be an important fact for the court to consider in reaching its conclusion.

We do not believe the deed could be properly interpreted without taking into consideration the situation of the parties and all the circumstances surrounding its execution. As authority for their contention that there was a reservation of the reversionary interest, appellants cite the case of *Faus* v. *Pacific Electric Ry. Co.,* 146 Cal.App.2d 370 [303 P.2d 814], which involved a similar exception, and they say that the trial court found that the reversionary interest was retained and that on appeal this finding was sustained. This is true, but the reasons for the holding were that the question was considered by the court to be one of fact and that the finding was not unsupported by the inferences which the trial court had drawn from the facts in evidence.

The question as to the intent of the parties to an ambiguous agreement that does not clearly express their intention is one of fact. (*Grennan* v. *McGregor,* 78 Cal. 258 [20 P. 559]; *Moakley* v. *Los Angeles Pacific Ry. Co.,* 139 Cal.App. 421 [34 P.2d 218].)

The reservation in question was susceptible of opposing inferences. It cannot be determined, as a matter of law, from the face of the instruments, whether the deed of Lewis to North American, and the instruments which followed, were intended to except the reversionary interest or only the interest which had been previously conveyed to the

predecessor of Pacific Electric. It will be for the trial court to draw the inferences which will determine the intentions of the parties from such evidence as they see fit to produce.

A further contention of respondent is that the court refused to decide another material issue. In its answer respondent pleaded facts which it contends were sufficient to defeat appellants' claimed right to a judgment declaring that the interests of the company in the right of way lands have been forfeited. In brief, these facts are that through changed economic conditions it became necessary to discontinue the passenger service by rail and to substitute therefor passenger service by bus; the Public Utilities Commission granted the right to make such substitution, and the bus service was installed and has been continuously maintained. It was also alleged that plaintiffs own no land adjoining any of the rights of way, and it is contended that this separation of ownership of the right of way interest from the lands intended to be benefited by the maintenance of passenger service, together with the other changed conditions, would render it inequitable and unjust to enforce a forfeiture in favor of plaintiffs. This issue, also, was one of fact for the trial court, and must be determined as such. (*Downs* v. *Kroeger,* 200 Cal. 743 [254 P. 1101] ; *Hurd* v. *Albert,* 214 Cal. 15 [3 P.2d 545, 76 A.L.R. 1348].)

We have purposely omitted discussion of the legal principles that would be applicable to findings that might be made upon the issues that are to be retried. We have also refrained from any statement which might indicate an opinion with respect to the facts to be considered by the trial court or as to their significance.

The judgment is reversed.

Ford, J., concurred.

VALLÉE, J.—I concur in the judgment. I am in accord with the construction of deeds 1, 2, and 3. I am of the opinion deed 4 is in the same category as deeds 1, 2 and 3. It contains the same conditions as the other deeds. No mention is made in the opinion of the fact that in deed 4 by Lewis Bradbury to defendant's predecessor the conditions are stated following the granting clause and before the habendum. In the light of the conditions stated in deed 4, I find nothing uncertain or ambiguous in the provision which appears after the description and preceding the habendum in the deeds which fol-

lowed: "Except such portions thereof as are now included in rights of way for railroad purposes and in established roads and highways." Respondent did not appeal. Section 956 of the Code of Civil Procedure provides that "Upon an appeal from a judgment the court may review the verdict or decision, and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment, or which substantially affects the rights of a party. . . . The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the court to and it may review any of the foregoing matters *for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken.*" (Emphasis added.) Since plaintiffs were not prejudiced by the error, if there was error, defendant may not question the failure of the trial court to find on the issue of changed economic conditions and, as I read its brief, it has not done so. Further, title reverted irrespective of the special defenses whether the facts alleged in them are true or not.

Respondent's petition for a hearing by the Supreme Court was denied February 15, 1961.