Filed 5/12/25

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, <br><br>     Defendant and Respondent. | B332397 <br><br> (Los Angeles County Super. Ct. No. 19STCV26702) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Fruin, Jr., Judge. Affirmed in part, reversed in part, and remanded with directions.

Pia Hoyt, Scott R. Hoyt, John Phillip Mertens; Greines, Martin, Stein & Richland, Edward L. Xanders and Stefan C. Love for Plaintiff and Appellant.

Keaster Law Group, Robert W. Keaster, Michael C. Denlinger; Hinshaw & Culbertson and Robert J. Romero for Defendant and Respondent.

———————————————

# INTRODUCTION

California law does not require one insurer to contribute to or reimburse another insurer who makes a voluntary payment. (See *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 199–200; see *Truck Ins. Exchange v. Unigard Ins. Co.* (2000) 79 Cal.App.4th 966, 974; see also Civ. Code, § 1432.)  This is the third case involving two insurance carriers arguing whether one was required to reimburse the other for defense costs expended under an umbrella policy for the insured.  Appellant Truck Insurance Exchange (Truck) argues that the settlement it reached with Federal Insurance Company (Federal) to end the first litigation in 2013 was procured by Federal's fraudulent misrepresentation and concealment. Federal did not disclose it had *no duty to pay* the insured's defense fees but had made a business decision to do so "at its option."  Truck argues it would have never agreed to pay $4.9 million in settlement had it known Federal contributed to the insured's defense voluntarily "at its own expense."

On appeal, Truck contends the trial court addressed the claim for fraudulent misrepresentation but failed to address the fraudulent concealment claim.  Truck argues we should reverse and remand for a new trial.  We agree.  Federal argues independent grounds warrant affirming the judgment against Truck.  We disagree with Federal.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.    *Factual Background*

Since 1986, more than 30,000 plaintiffs have filed lawsuits against Moldex-Metric, Inc. (Moldex), alleging Moldex manufactured defective air respirators and masks that failed to

2

protect them from inhaling silica, asbestos, and mixed dust leading to bodily injury. Moldex gave notice of the lawsuits to its primary liability insurers, who defended and indemnified Moldex.

In 2003, when the primary insurers' policy limits were exhausted, Moldex gave notice of the lawsuits to its excess and umbrella liability insurers—Federal and First State Insurance Company (First State)—which began to indemnify and pay for Moldex's defense in the lawsuits.

On December 20, 2004, Moldex belatedly discovered it was additionally insured under a primary liability policy issued by Truck and sought coverage from Truck. Federal and First State sought contribution from Truck for the indemnity and defense fees they had already paid Moldex under their respective umbrella policies. Litigation ensued.

## II.   *Federal's Umbrella Policy*

We recite two provisions from Federal's umbrella policy, which come into play throughout the parties' litigation:

Section 3, entitled "Limits of Liability," provides in part: "In the event that the aggregate limits of liability of the underlying policies, listed in the schedule of underlying insurance, are exhausted . . . this policy shall, subject to the Company's limit of liability and to the other terms of this policy, with respect to occurrences which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the Company's aggregate limit of liability . . . is exhausted."

Section 4(a) entitled "DEFENSE PROVISIONS" provides: "The Company [Federal] shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceeding instituted against the

3

insured [Moldex], but shall have the right and be given the opportunity to be associated in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on part of the Company under the terms of this policy. *If the Company avails itself of such right and opportunity the Company shall do so at its own expense.*" (Italics added.)

## III.   *Case #1: Federal's Reimbursement Action*

On September 20, 2007, Federal filed a complaint against Truck for contribution, reimbursement, and declaratory relief (L.A. Super. Court case No. BC377842). Federal alleged it undertook Moldex's defense and indemnified Moldex without reservation pursuant to the terms of the Federal policy.[1] However, in light of the existence of available and unexhausted primary insurance, Federal, as an umbrella insurer, had no duty to defend on Moldex's behalf. "[A]s the Truck policy is a primary policy and the Federal policy is an umbrella policy, it is the Truck policy that should have responded to [Moldex's] actions." Federal alleged that because of the Truck primary policy, Truck was obligated to reimburse Federal for the amounts it had paid. Federal sought reimbursement from Truck for approximately $4.5 million in defense costs and $98,945 in indemnity costs, plus interest thereon.

On December 19, 2007, Truck filed an answer denying the allegations of Federal's complaint. It asserted 38 affirmative defenses, including the following as its 23rd defense: "To the

---

[1]     The term "without reservation" means that the insurer is providing a defense without retaining a right to challenge the insured's right under the policy to receive such benefit.

4

extent that Moldex and/or Federal voluntarily paid, assumed an obligation to pay, or incurred an expense without notice and approval by Truck, Truck has no obligation to Moldex and/or Federal for any such payment, obligation or expense." (Some capitalizations omitted.)

On November 24, 2009, Federal filed a motion for summary judgment on its cause of action for declaratory relief as to reimbursement from Truck in the amount of $3,854,391 in defense costs and $98,213 in indemnity. Federal argued: "As the Court knows, Federal defended and indemnified [Moldex] pursuant to an excess policy of insurance . . . following the exhaustion of all then-known primary policies. . . . The law requires that Truck reimburse Federal for amounts paid by Federal in defense." "The law is also clear that before coverage attaches pursuant to an excess policy, the policy limits of the underlying primary policy must be exhausted. As such, the law requires that the entire loss be shifted to the one who was primarily liable for the loss, Truck." (Italics omitted.)

On June 3, 2011, the trial court granted Federal's motion for summary judgment. "Simply put, all available primary coverage has to exhaust before the excess carriers have any duty to share in the continuing expense of defending and settling claims."

Following years of litigation, on February 28, 2013, the trial court entered judgment against Truck, awarding approximately $6 million to Federal ($3,854,391 in defense costs plus $1,992,058 interest and $98,213 in indemnity costs plus $56,835 interest). The court found Federal contributed to "the defense costs Moldex incurred after December 20, 2004 *under an umbrella policy*" and that Truck had a duty to defend Moldex

5

pursuant to its primary liability policy upon Moldex's December 20, 2004 tender of notice to Truck about the lawsuits. The trial court further found Truck had a duty to reimburse Federal and First State for their payments of Moldex's defense and indemnity incurred between December 2004 and June 2011.

Truck appealed to our court (Case No. B248065).

IV. ***Settlement Agreement and Release***

While Truck's appeal was pending, Truck, Federal, and First State reached a "settlement agreement and release" signed July 24, 2013. Pursuant to the terms of the settlement, Truck agreed to pay Federal the total amount of $4,858,700 for defense fees and indemnity costs.

The parties released each other from any and all claims that are, were, or could have been asserted in the action. The release, however, contained an exception—the release "shall not apply to, have any effect on or constitute a release" of "any of Truck's rights to claim contribution for any indemnity paid over its limit and defense fees incurred therewith," to the extent such rights exist. Truck agreed to "continue to defend and indemnify Moldex . . . until such time as Truck establishes that it has properly exhausted the Truck Policy," in which case "Truck agrees to work with Moldex, Federal, and First State to ensure an orderly transition of the defense."

And finally, each party represented and warranted that the agreement had been executed and delivered in good faith and for valuable consideration.

Truck thereafter dismissed its pending appeal.

V.       *Case #2: Truck's Reimbursement Action*

On January 23, 2014, Truck filed a complaint against Federal, First State, and Moldex for declaratory relief in that the primary policy's limit was exhausted on July 24, 2013 *and* for reimbursement or contribution of defense costs and indemnity paid in excess of Truck's policy limit after July 24, 2013 (L.A. Super. Court Case No. BC534069).  Truck alleged that because the primary liability policy exhausted on July 24, 2013, Truck had no further duty to defend or indemnify Moldex.

Litigation continued for some time.  On May 18, 2017, the Court of Appeal reversed the trial court's determination that Truck's primary policy had not exhausted.  This court found Truck's policy was indeed exhausted on July 24, 2013 and that Truck had no further duty to defend or indemnify Moldex (Case No. B272378).

Following remand, on December 1, 2017, Federal moved for summary adjudication on a single issue: "Truck is not entitled to reimbursement from Federal for 'defense fees and costs[2] paid since July 24, 2013' because *no duty to defend* [Moldex] exists under the Federal Umbrella Policy."  (Italics added.)  Federal revealed it "*made a business decision* to exercise it rights to associate in the defense" pursuant to section 4(a) of the umbrella policy.  (Italics added.)  Because Federal opted to pay with no duty to defend, it argued it could not be liable to contribute to post-exhaustion defense fees.

In support of its summary judgment motion, Federal submitted the declaration of assistant vice president/manager

_____

2       Federal did not dispute that a duty to *indemnify* Moldex exists under the umbrella policy; it argued only against a duty to *defend*.

7

Edward Sluke (Sluke), who stated: "[I]n or about 2003, *Federal made [a] business decision, at its option, to exercise its right to associate in the defense* of the Underlying Lawsuits and began to defend the Underlying Lawsuits."  (Italics added.)

On June 14, 2018, the trial court granted Federal's motion and entered judgment against Truck on its third cause of action for contribution; it found the language set forth in Federal's umbrella policy did not impose on Federal a duty to defend and, instead, afforded Federal the right to associate in the defense. The trial court issued a ruling on August 1, 2018 and expressly found "the pertinent terms of the Policy are clear and unambiguous" in that Federal had "no duty to defend the claims for which Truck seeks recovery of defense costs."  "Federal has no duty to defend the underlying tort actions for which Truck seeks recovery of defense costs because [section 4(a) of Federal's policy] expressly states there is no duty to defend under the Policy."

Truck appealed the judgment on other grounds, and on November 14, 2022 Division 5 of this court issued its decision (Case No. B298906).  The Court of Appeal "reject[ed] Truck's assertion that it did not waive, but instead expressly reserved, its right to recoup from [First State] and Federal defense fees and indemnity costs that Truck incurred after the parties entered into the Settlement Agreement."  The Court of Appeal was "not persuaded by Truck's argument that it reserved the right to recoup indemnity costs and defense fees in the exception to the release contained" in the settlement agreement.  The trial court "did not err by granting summary adjudication as to Truck's third cause of action for contribution."

8

## VI. *Case #3: Truck's Fraud Action*

On July 30, 2019, Truck filed the instant action against Federal in Los Angeles Superior Court based upon "fraud perpetrated by Federal in support of its efforts to obtain contribution for amounts it paid to defend Moldex." In the operative second amended complaint (SAC), Truck sued for fraud, unjust enrichment, and sought recission of the settlement agreement.

Truck claimed Federal "represented . . . it had a duty to defend Moldex under the Federal policy" based on "its claim handling conduct and statements" and "pa[id] defense costs without any reservation of rights." Throughout Case #1 (i.e., Federal's reimbursement action), Federal "assert[ed] this position in statements it made in its pleadings, motions, affidavits, briefs leading to its judgment and in negotiating the Settlement." Federal represented it paid defense fees "pursuant to" or "under its policy," as though it paid in satisfaction of its duty to defend Moldex. Then "[i]n a complete reversal, Federal . . . represented [it] defended/paid defense costs under a voluntary business decision in 2003 . . . without any duty under its policy to do so." Federal misrepresented its position in bad faith and "conceal[ed] this fact until it reversed course in December 2017." Truck posited: "Had Federal disclosed its payments were voluntary before July 24, 2013, rather than in December 2017, it knew Truck would not have entered into the Settlement, nor paid Federal nearly [$5] million dollars thereunder and dismissed its appeal." Federal would "have immediately lost [Case #1] and been denied a reimbursement judgment against Truck."

Federal took "numerous steps to conceal the voluntary nature of its decision to provide a defense to Moldex." At no time

9

did Federal "reserve the right to disclaim a defense obligation under its policy, or state it owed no such duty but was voluntarily assuming the defense of Moldex." Truck referred to various documents, pleadings, and communications between counsel as support. For instance, in the November 24, 2009 motion for summary judgment, Federal argued it "defended and indemnified [Moldex] *pursuant to an excess policy of insurance*"—it made no mention that it voluntarily opted to pay as a business decision. (Italics added.) Truck referred to the trial court's February 28, 2013 ruling where it found Federal contributed to "the defense costs Moldex incurred after December 20, 2004 *under an umbrella policy*." Truck also referred to, and attached as an exhibit, a letter from Federal's counsel dated September 10, 2004, stating: "As you are well aware, Federal has agreed to defend and indemnify Moldex with respect to the silica claims as provided under the policies and allowed under the law. . . . [¶] In addition, Moldex seems to be arguing that by agreeing to defend and indemnify, Federal has agreed to a blank check. That is not the case, nor is that position supported by law. Federal has agreed to defend and indemnify subject to the terms of its policy."

Truck sought rescission of the settlement agreement because it was not entered "in good faith" and was obtained by "extrinsic fraud" via Federal's "false, misleading [statements] and contrary to Federal's 'true' position." Truck requested general, compensatory, and consequential damages in the amount of $4,858,700 (plus interest from July 24, 2013 to date of judgment), punitive and exemplary damages, and reasonable attorney fees and costs.

10

## VII.   *Federal's Special Motion to Strike*

On August 29, 2019, Federal filed a special motion to strike Truck's complaint as a strategic lawsuit against public participation under the anti-SLAPP statute (Code Civ. Proc., § 425.16).  Federal argued Truck's complaint is based on Federal's "acts in furtherance of its right to petition" during Case #1 and are thus protected speech.  Federal argued Truck cannot show a probability of prevailing on its claim for fraud because it is barred by the litigation privilege (Civ. Code, § 47).

On September 30, 2019, the trial court denied Federal's anti-SLAPP motion.  As to the first prong, the court found Federal met its burden to show that Truck's fraud claim arises from Federal's protected conduct in connection with the litigation and resulting settlement of Case #1.  As to the second prong, the court found Truck demonstrated a probability of prevailing on its claim for fraud.  Federal appealed the trial court's denial of its motion.  On April 7, 2021, we issued a decision affirming the trial court's order (Case No. B302365).[3]

On January 14, 2022, Federal filed its answer to the SAC, consisting of a general denial and 21 affirmative defenses, including that Federal did not act as a "volunteer" in contributing to Moldex's defense (6th affirmative defense); the SAC is barred by the litigation privilege (7th affirmative defense); and Truck

---

[3]   "If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, *neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action*."  (Code Civ. Proc., § 425.16, subd. (b)(3), italics added.)

did not reasonably rely upon any alleged misrepresentation by Federal (14th affirmative defense).

## VIII. *Trial*

On March 8-10, 2023, the trial court presided over a three-day bench trial.

In Truck's trial briefs, Truck expressly asserted two theories of fraud—misrepresentation and "[a]lternatively. . . concealment." Truck listed the elements of fraudulent concealment and contended: "Even if the Court finds [Federal's representations were] not outright false, it concealed the truth of Federal's business decision to optionally defend." During opening statement, Truck argued Federal had "concealed [its] position" that it was "all along operating under a[n] optional business decision as of 2003 under [Federal's policy] provision under [section] 4-A, which . . . says we don't have an obligation to defend." Truck further argued that Federal's fraud was extrinsic and thus not protected by the litigation privilege.

In Federal's trial briefs, Federal argued that "Truck was not denied the ability to inquire as to why Federal participated in Moldex's defense or to argue that Federal's contributions . . . were voluntary before it entered the Settlement Agreement." "[T]he notion that Federal 'pulled the wool over Truck's eyes' is not credible. At its core, Truck contends that it was kept in the dark that Federal was reimbursing defense costs pursuant to section 4(a) of its excess umbrella policy. That theory ignores that Federal and Truck were adversaries in coverage litigation, and that Truck, represented by experienced counsel, had all the tools of civil discovery at its disposal to ascertain the basis for Federal's defense reimbursements payments." Federal further argued it "owed no duty of disclosure" such that "Federal should

12

have told Truck [it] was defending under Section 4(a) of its umbrella policy" because "they were adversaries in litigation" and there was no contract between them. Federal argued it was not a "volunteer" because contributing to Moldex's defense was a business decision to protect itself from any possible bad faith action by Moldex. Federal further argued that the litigation privilege precluded Truck's causes of action because Truck offered no evidence of extrinsic fraud.

The court asked Federal about its policy, and counsel for Federal explained: "You have to have exhaustion before the [Federal] policy attaches. Okay. Then you have to assess what the policy offers. Once you're at the attachment point, this policy allows a defense at our option under 4-A, limits liability are separate because that's what this policy is, it focuses on liability." The trial court asked, "But the conditions for the duty to defend are, one, the policy must attach, which would require exhaustion. Then you look at 4-A?" Federal replied, "4-A does not have an immediate duty to defend. It gives us the option to defend if we want. That's what the policy says and that's what Judge Highberger found [in Case #2]."

James Robertson, Federal's own expert witness, testified at trial that section 4(a) of Federal's policy does not provide a duty to defend, but rather, "provides the opportunity to defend. If Federal agrees that it will defend, they can assume that duty without having a contractual obligation to do so." Robertson also referred to Federal having "assumed the duty voluntarily."

The parties submitted voluminous trial exhibits.

One such exhibit was Federal's April 23, 2008 responses to Truck's special interrogatories (plaintiff's trial exhibit 132). Truck's special interrogatory No. 24 provides: "State every fact

that you maintain supports your claim . . . that Truck is obligated to reimburse you for the amounts you have paid for your time-on-the-risk share of Moldex's defense costs from the time of Moldex's tender of the underlying actions to Truck." (Some capitalization omitted.) Federal responded: "Federal issued to Moldex [a] Commercial Umbrella Liability Policy . . . . [¶] Truck issued to Moldex a primary liability insurance policy . . . . [¶] In December of 2004, Moldex notified Truck of the underlying actions and requested that it be defended and indemnified under the Truck policy. In May of 2005, Truck advised that it would defend Moldex against the underlying actions pursuant to a reservation of rights. Federal was not advised by Moldex until July 2007 of the existence of the Truck policy, the tender of the underlying actions to Truck, or Truck's agreement to defend Moldex pursuant to a reservation of rights. Since the time Moldex tendered the underlying actions to Truck, Federal and/or First State have directly or indirectly paid certain amounts for defense and indemnity for the underlying claims."

Another exhibit was a letter dated November 9, 2004 to Federal's counsel (plaintiff's trial exhibit 117) where Moldex's counsel demanded continued defense funding despite Federal's coverage disputes pending with Moldex (—"Obviously, this does not excuse Federal from its duties to Moldex. Indeed, . . . Moldex expects Federal to pay, and hereby demands that Federal reimburse . . . as its contribution, the full amount of the fees and costs incurred in Moldex's defense.").

The transcript of the March 31, 2011 deposition of Federal's person most qualified—Robert Townsend (Townsend), was also submitted (plaintiff's trial exhibit 138). When asked, "When the Federal primary policies exhausted, did Federal under its

14

umbrella access drop down and continue in their place under this provision that we've been looking at in the Limits of Liability section?" Townsend answered, "Federal didn't defend with its umbrella policies until the last primary policy exhausted." "[W]e believed that the first layer of insurance, the primary, would need to be exhausted entirely before the umbrella policies would respond."

In the declaration of Sluke dated March 4, 2022 (plaintiff's trial exhibit 149), Sluke stated: "Federal made a *business decision* in or about 2004, *at its option*, to exercise its right under the Federal Umbrella Policy to associate in the defense of the Underlying Lawsuits." (Italics added.)

In the August 24, 2022 deposition transcript of Sluke (plaintiff's trial exhibit 151), Sluke was asked "what specifically in the claim file did you see that led you to" state Federal made a "business decision, at its option, to exercise its right to associate in the defense." Sluke answered, "I can't point to anything specific in the claim file that I can recall." Sluke was asked to "identify [any] single document in 2003 or 2004 that says Federal chooses [to associate] in the defense" but Sluke said he "can't." When asked "who it was that made the determination to associate in under 4(a)," Sluke believed it was "James Deutsche." Sluke stated that Townsend was the "claim handler on the account" and "would have had discussions" regarding the determination to associate under 4(a).

IX.  ***Trial Court's Ruling and Judgment***

On June 12, 2023, the trial court issued a lengthy statement of tentative decision.

The tentative provided: "Case #2's judicial ruling is that Federal had no duty under its umbrella policy to contribute to the

15

Moldex defense costs.  Truck, therefore, cannot succeed in alleging that Federal was required to disclose, and fraudulently concealed in not disclosing, that Federal had a duty under its umbrella policy to defend Moldex once the primary policies were exhausted. [¶] Truck's fraud claims, in this Case #3, are, therefore, based on the allegation that Federal committed a different fraud (by misrepresentation) in affirmatively representing to Truck that it was contributing to Moldex's defense cost under a provision in its umbrella policy that imposed on it a duty to defend."

The tentative listed the five elements for fraudulent misrepresentation and provided: "The Court, at trial, examined such evidence to determine whether it proved fraud and, if so, whether that fraud was extrinsic to the litigation proceedings in Case #1 . . . . The Court concludes that the evidence does not support a fraud allegation, but that, if it did, the fraud was not extrinsic to this litigation."  The trial court reviewed the documents relied upon by Truck (including Federal's complaint in Case #1, Federal's discovery responses, and Townsend's deposition) and found "clear from the evidence that Truck offered that the representations Federal made directly to Truck were not actionable misrepresentations."  The court found the representations alleged to be fraudulent fall within the litigation privilege.  "Because Truck's first cause of action for fraud fails, so do the derivative causes of action for rescission and unjust enrichment."

Truck objected to the tentative and argued that the trial court did not address the fraudulent concealment theory that Truck argued.  Truck "never claimed that Federal concealed a duty to defend.  Truck . . . claimed that Federal concealed its

16

voluntary business decision and the absence of a duty to defend by presenting it as acceptance of a duty to defend." (Italics omitted.) Truck argued the trial court did not "address whether or not Federal concealed its voluntary business decision while making communications . . . suggesting it had a duty once Truck exhausted, or . . . by attempting to control the defense as if it had a duty." Truck added, "In the alternative, if the Court believes concealment was addressed, Truck asks the Court to specifically address the factors applicable for a duty to disclose outside a fiduciary or confidential relationship."

On July 17, 2023, the trial court adopted its tentative as its final statement of decision; judgment in favor of Federal was entered. On July 18, 2023, notice of entry of judgment was filed.

Truck timely appealed.

## DISCUSSION

Truck contends we should reverse the judgment and remand for a new trial on Truck's claim for fraudulent concealment. Truck argues the trial court failed to address its claim for fraud under the concealment theory and considered only misrepresentation. We agree with Truck.

Federal argues independent grounds warrant affirming the judgment against Truck. However, we are not persuaded by Federal's arguments to that effect.

## I.    *Standard of Review*

" '[I]n reviewing a judgment based upon a statement of decision following a bench trial,' " we review questions of law de novo. (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765.) We apply a substantial evidence standard of review to the trial court's findings of fact. (*Niko v. Foreman* (2006)

17

144 Cal.App.4th 344, 364).  Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.)

Where the facts are undisputed, the effect or legal significance of those facts is a question of law. (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.)  If an issue "requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently."  (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial.  (*Gomez v. Smith*, *supra*, 54 Cal.App.5th at p. 1026.)  The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.  (*Id*. at pp. 1026–1027.)  Where a statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.  (*Id*. at p. 1027.)

"When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment . . . , it shall not be inferred on appeal . . . that the trial court decided

18

in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.)

## II.   *Applicable Law*

### A.   Litigation Privilege

Civil Code section 47 provides an absolute privilege for communications made in any legislative, judicial or other official proceeding authorized by law, or in the initiation or course of any other proceeding authorized by law.  (*Id.*, subd. (b).)  Thus, Truck cannot succeed if the litigation privilege precludes a finding of liability on its claim for fraudulent concealment.

The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of harassment in subsequent derivative actions. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  The privilege is "not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

### B.   Extrinsic vs. Intrinsic Fraud

"Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the

19

proceeding." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068.)  In contrast, fraud is "intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but *unreasonably* neglected to do so." (*Id*. at p. 1069, italics added.)

III. *Analysis*

Throughout the underlying proceedings and at trial, Truck argued and presented evidence to show that Federal fraudulently concealed it had contributed to Moldex's defense "at its option" and "at its own expense" rather than out of a duty to defend. Based on our review, we agree with Truck that the trial court did *not* address the fraudulent concealment claim despite Truck's objection to the tentative decision to that effect.

In its decision, the trial court listed the elements for fraudulent misrepresentation and proceeded to analyze the evidence relied upon by Truck in the context of its misrepresentation theory.  That evidence was Federal's complaint in Case #1, Federal's discovery responses, and Townsend's deposition.  However, the trial court's ruling did not address the concealment theory pleaded and argued by Truck; it addressed concealment in a different context not argued by Truck.

The trial court ruled that Truck "cannot succeed in alleging that Federal was required to disclose, and *fraudulently concealed* in not disclosing, *that Federal had a duty under its umbrella policy to defend Moldex once the primary policies were exhausted*. [¶] Truck's fraud claims, in this Case #3, are, therefore, based on the allegation that Federal committed a different fraud (by

20

misrepresentation) in affirmatively representing to Truck that it was contributing to Moldex's defense cost under a provision in its umbrella policy that imposed on it a duty to defend." (Italics added.) That is not what Truck claimed and argued.

Truck's complaint in the fraud action (Case #3) alleged: "Had Federal *disclosed* its payments were voluntary before July 24, 2013, rather than in December 2017, it knew Truck would not have entered into Settlement nor paid Federal nearly [$5] million dollars thereunder and dismissed its appeal." (Italics added.) Federal would "have immediately lost [Case #1] and been denied a reimbursement judgment against Truck." Federal took "numerous steps *to conceal* the voluntary nature of its decision to provide a defense to Moldex." (Italics added.) Truck presented and argued two theories of fraud at trial—misrepresentation and "[a]lternatively. . . concealment." Truck argued Federal "concealed the truth of Federal's business decision to optionally defend" and "concealed" it was "all along operating under a[n] optional business decision as of 2003 under [Federal's policy] provision 4-A, which . . . says we don't have an obligation to defend."

Having misunderstood Truck's concealment theory, the court precluded consideration of that claim and addressed the misrepresentation claim only. During trial on March 8, 2023, the court commented, "I would think there is no claim of concealment so this is straight misrepresentation." Even Federal confirmed to the court that Truck is "arguing as if there's some concealment."

We agree with Truck that the trial court did not consider the fraudulent concealment claim, despite Truck's objection to the trial court's tentative to that effect.

21

Federal does not contest this point in its respondent's brief. Instead, Federal contends the factual findings by the trial court provide an independent ground for us to affirm the judgment. (See *Faus v. Pacific Elec. Ry. Co.* (1960) 187 Cal.App.2d 563, 569 [these reasons "furnish independent grounds for affirmance of the judgment"]; *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 163 [harmless error "if the judgment is otherwise supported"].) First, Federal argues it did not act as a "volunteer" in reimbursing Moldex's defense fees. Second, Federal argues any alleged fraud is intrinsic in nature and thus subject to the litigation privilege (per Civ. Code, § 47, subd. (b)). Federal contends the trial court made findings to that effect and that substantial evidence supports said findings. We address the two points.

### A. Federal Had No Duty to Defend Moldex and Assumed a Duty to Defend Per Section 4(a) of Its Policy

First, we disagree with Federal's representations in its respondent's brief that "substantial evidence supports the trial court's *finding* that Federal was not a volunteer" and that the "trial court *concluded* that Federal did not act as a volunteer in contributing to the defense of Moldex." (Italics added.) Federal is mistaken. The record demonstratively shows the trial court made no such finding.

Federal next argues that we should imply such a finding based on the trial court having found that Federal "was motivated to participate in Moldex's defense because it faced indemnity obligations under its umbrella policy if Moldex suffered trial losses." Federal contends substantial evidence supports such an implied finding.

We disagree with Federal for several reasons.

22

We start with the primary reason.

We remind the parties that the trial court, in granting Federal's summary judgment motion on June 14, 2018 in Case #2, found Federal's umbrella policy did not impose on Federal a duty to defend and, instead, afforded Federal the right to associate in the defense. In its August 1, 2018 ruling, the trial court expressly found that "the pertinent terms of the Policy are clear and unambiguous" in that *Federal had "no duty to defend the claims* for which Truck seeks recovery of defense costs." (Italics added.) It further found "*Federal has no duty to defend the underlying tort actions* for which Truck seeks recovery of defense costs because [section 4(a) of Federal's policy] expressly states there is no duty to defend under the Policy." This specific issue was not argued on appeal in case No. B298906 and the 2022 appellate decision (finding the trial court "did not err by granting summary adjudication as to Truck's third cause of action for contribution") has long since been final.

It appears Federal is now arguing, in Case #3, that despite not having had a duty to defend and assuming, at its option, the right to associate in and contribute to Moldex's defense—as determined in Case #2—that Federal does not qualify as having volunteered to defend or contribute to Moldex's fees.

Federal contends it "was not acting as a volunteer" because it faced a possible bad faith action by Moldex and a possible contribution action by First State if it ceased contributing to Moldex's defense. Federal relies on a letter from Moldex's counsel dated November 9, 2004 (plaintiff's trial exhibit 117), where Moldex demanded that Federal continue defense funding despite Federal's coverage dispute ("Obviously, this does not excuse Federal from its duties to Moldex. Indeed, . . . Moldex

23

expects Federal to pay, and hereby demands that Federal reimburse"). This does not demonstrate to us that Federal did not volunteer or assume a duty to defend Moldex. This demonstrates to us that Federal was indeed "motivated to participate in Moldex's defense," as the trial court found, even though it did not have a duty to do so.

Federal's own expert witness Robertson testified that section 4(a) of Federal's policy "provides the opportunity to defend. If Federal agrees that it will defend, they can assume that duty without having a contractual obligation to do so." That is exactly what the record shows happened here. Federal had the opportunity to defend and assumed that duty voluntarily.

Federal essentially argues that it can both lack a duty to defend Moldex and yet still defend under an obligation rather than as a volunteer. Either Federal volunteered to pay for the defense, or it did not. Federal's position renders its section 4(a) policy language "at its own expense" a nullity. Federal's position is that it utilized section 4(a) of its policy and not section 3. Section 4(a) expressly provides that Federal "shall have the right and be given the opportunity to be associated in the defense" and if it decides to do so (which it did), it "*shall do so at its own expense*." (Italics added.)

Federal's reliance on *Employers etc. Ins. Co. v. Pac. Indem. Co.* (1959) 167 Cal.App.2d 369 is misplaced. In that case, a question arose as to whether the insured's loss was covered by a comprehensive liability policy or an automobile insurance policy. The comprehensive liability insurer paid the insured and brought an equitable subrogation action against the automobile insurer. (*Id*. at pp. 373–374.) The trial court determined the loss was covered under the automobile policy. An issue on appeal was

24

whether the comprehensive liability insurer was a volunteer because it had no legal obligation under the comprehensive liability policy. (*Id*. at p. 376.) The Court of Appeal concluded the comprehensive liability insurer was not a volunteer because "[e]ven though there was no legal obligation on plaintiff to make the payment," it nevertheless had the potential obligation to defend and cover the insured's loss. (*Id*. at p. 377.) The potential liability created the necessary interest to protect. This point differentiates the comprehensive liability insurer from that case with Federal in this matter, who had no potential obligation or duty to *defend* Moldex per section 4(a) of its policy but only assumed to do so at its option. The insurer in *Employer's* had an interest in covering the insured's loss that it might be obligated to pay, when that obligation later was found not to exist. Here, that obligation never existed for Federal as the policy section it utilized in defending Moldex expressly provides Federal was not obligated and had no duty to defend. Federal only had a potential duty to *indemnify* Moldex and had no potential or actual liability for Moldex's *defense*. Federal's arguments on appeal lend support to this as well, as Federal argues in its respondent's brief that it had "a pecuniary interest due to its potential duty to *indemnify* Moldex" and had "faced potential *indemnity* liability under its Umbrella Policy and had significant interests to protect given Moldex's previous decisions to settle cases without Federal's consent." (Italics added.) Federal's contributions to Moldex's defense were made as a discretionary act under its optional right pursuant to section 4(a) of the coverage terms.

B.    Truck's Fraudulent Concealment Claim Is Not Barred by the Litigation Privilege

Federal argues "substantial evidence support[s] the trial court's determination that *any alleged fraud* on the part of Federal was *intrinsic* in nature and therefore subject to the absolute litigation privilege."  Truck, on the other hand, argues that we independently determine whether the litigation privilege applies to Federal's fraudulent concealment claim.

Federal is correct in asserting that the trial court's findings of fact pertaining to the existence of extrinsic fraud are reviewed for substantial evidence.  (*Kramer v. Traditional Escrow, Inc.* (2020) 56 Cal.App.5th 13, 28.)  It is also true that our overall standard of review of the trial court's application of those findings is an abuse of discretion.  (*Ibid*.)  However, Federal is mistaken in qualifying the trial court's extrinsic fraud finding to "*any alleged fraud* on the part of Federal."  That's because the trial court's decision expressly did not consider Truck's fraudulent *concealment* claim as pleaded and argued, and only considered Truck's fraudulent *misrepresentation* claim: "Truck, in its operative SAC, alleges that Federal committed fraud by making representations directly to Truck that it knew to be false and that it intended Truck should rely on."  Thus, we independently address the question of whether the litigation privilege applies to Truck's fraudulent concealment claim. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801 [application of a rule of law to undisputed facts is a question of law, subject to independent review]; *Crocker National Bank v. City and County of San Francisco*, *supra*, 49 Cal.3d at p. 888 [If an issue "requires a critical consideration, in a factual context, of legal principles

26

and their underlying values, the question is predominantly legal and its determination is reviewed independently."].)

To avoid the conclusive effect of the litigation privilege, Truck argues Federal's fraud was extrinsic to Federal's reimbursement suit (i.e., Case #1) because it deprived Truck from fully participating in the proceedings and the resulting settlement agreement by concealing the voluntary nature of Federal's decision to defend Moldex.

Federal argues the fraud at issue is intrinsic and therefore subject to the litigation privilege. We find the issue turns on whether Truck "had the opportunity to present [its] case and to protect [itself] from any mistake or fraud of [its] adversary, but *unreasonably neglected* to do so." (*In re Marriage of Stevenot*, *supra*, 154 Cal.App.3d at p. 1069, italics added.)

Federal contends Truck did not take sufficient efforts in discovery to ferret out Federal's business decision under section 4(a) of its policy rather than section 3. Truck argues it is not unreasonable given Federal's communications and discovery responses indicating it was operating under some duty to defend as opposed to a voluntary business decision.

Federal provided Truck with a copy of its policy as early as September 2007, attached to Federal's complaint in Case #1. Federal averred in its 2007 complaint that "in light of the existence of available and unexhausted primary insurance, Federal, as an umbrella insurer, has no duty to defend . . . on Moldex's behalf." "[A]s the Truck policy is a primary policy and the Federal policy is an umbrella policy, it is the Truck policy that should have responded to [Moldex's] actions." As such, Federal alleged Truck was "obligated to reimburse Federal for the amounts it has paid." That language is inconsistent with

27

Federal's decision to defend Moldex "at its option" and "at its own expense" under section 4(a) of its policy, in which case Truck would have no obligation to reimburse Federal for costs that section 4(a) of the policy expressly states shall be "at [Federal's] own expense.

It is true, as Federal points out, the record does not establish that Truck ever asked the exact question of whether Federal's payments of defense costs were made under section 3 or section 4 of the policy. But why would Truck need to clarify when the wording of Federal's own complaint provides Truck was "obligated" to reimburse Federal, "an umbrella insurer [that] has no duty to defend" on Moldex's behalf "in light of the existence of available and unexhausted primary insurance" via discovery of Truck's lost policy.

Similarly, in its November 24, 2009 motion for summary judgment in Case #1, Federal argued: "The law requires that Truck reimburse Federal for amounts paid by Federal in defense" and that "before coverage attaches pursuant to an excess policy, the policy limits of the underlying primary policy must be exhausted. As such, the law requires that the entire loss be shifted to the one who was primarily liable for the loss, Truck." (Italics omitted.) Federal's choice of wording in its 2009 motion for summary judgment also indicates that it did not utilize section 4(a)—how can "the law require" Truck to reimburse Federal when section 4(a) expressly requires Federal's contribution to be "at [its] own expense." Indeed, the trial court similarly interpreted Federal's motion in its June 3, 2011 ruling: "Simply put, all available primary coverage has to exhaust before the excess carriers have any duty to share in the continuing expense of defending and settling claims."

28

When asked via Truck's special interrogatory No. 24 to "[s]tate every fact that you maintain supports your claim . . . that Truck is obligated to reimburse you for the amounts you have paid for . . . Moldex's defense costs" (some capitalization omitted), Federal responded by explaining that Federal issued Moldex a commercial umbrella liability policy and "paid certain amounts for defense and indemnity for the underlying claims" until discovery of the existence of Truck's policy, a "primary liability insurance policy." Nothing at all is mentioned about any business decision to assume Moldex's defense "at its option" pursuant to section 4(a), which specifies it shall be at Federal's own expense.

Truck served a request for production of documents and, in request No. 14, requested any and all documents that supported Federal's claim that Truck is required to reimburse Moldex's defense costs. It is no wonder no documentation indicating Federal's decision to utilize section 4(a) of its policy was produced, as Sluke testified during his August 24, 2022 deposition that he could *not identify a single document* that states Federal made a "business decision" to associate in the defense "at its option." According to Sluke, then, no document discovery could have revealed the business decision made by Federal. Further, Sluke testified that Townsend was the "claim handler" on Moldex's account and would have been aware of or "would have had discussions" regarding the determination to associate under section 4(a). However, when asked about Federal's position on Moldex's defense, Townsend testified repeatedly about section 3's limits and did not mention section 4(a) or any business decision during its March 31, 2011 deposition.

29

We find Truck did not "*unreasonably* neglect[]" to "protect [itself] from any . . . fraud if [its] adversary" (*In re Marriage of Stevenot*, *supra*, 154 Cal.App.3d at p. 1069, italics added), especially given there was no written record or mention whatsoever of Federal's "business decision"[4] in its entire claim file for Moldex and during the deposition of Townsend.  This, coupled with the wording of Federal's complaint and motion for summary judgment (not to mention the trial court's own ruling made June 3, 2011 on the motion for summary judgment) in Case #1, all supported the premise that Federal contributed to Moldex's defense out of a duty to do so that required reimbursement from Truck because of the discovery of Truck's primary policy.  This leads us to conclude that Truck did not "unreasonably neglect" to protect itself against the alleged fraudulent concealment by Federal, rendering it extrinsic.

Given the foregoing, we independently find Truck's claim of fraudulent concealment not barred by the litigation privilege.  We reverse the judgment on that cause of action and remand the matter to the trial court to hold a new trial to consider Truck's fraudulent concealment claim, as well as any other derivative causes of action that the trial court may have to reconsider in light of this reversal.

---

[4]  We note that Edward Sluke is inconsistent as to when this business decision was made.  In his declaration dated March 4, 2022, Sluke stated "Federal made a *business decision* in or about 2004, *at its option*," however in his declaration dated December 1, 2017, he states the business decision was made "in or about 2003."  (Italics added.)

## DISPOSITION

The judgment is reversed as to Truck's fraudulent concealment cause of action and remanded to the trial court with instructions.  The judgment is otherwise affirmed.  Truck is awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                                    STRATTON, P. J.

We concur:



        GRIMES, J.



        WILEY, J.

31